**Milton R. STONE, Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

No. 98–3012.

United States Court of Appeals, Federal Circuit.

June 11, 1999.

Roger A. Jatko, Littleton, Colorado, for petitioner.

Brian S. Smith, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued for respondent. With him on the brief were David M. Cohen, Director, and Joseph A. Kijewski.

Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and GAJARSA, Circuit Judge.

GAJARSA, Circuit Judge.

Milton R. Stone seeks review of the final decision of the Merit Systems Protection Board ("Board"), dated September 11, 1997, affirming the April 1, 1997 initial decision of the Administrative Judge ("AJ"), Docket No. DE–0752–97–0279–I–1. The Board sustained Mr. Stone's removal from his position as a bank examiner at the Federal Deposit Insurance Corporation ("FDIC"). For the reasons set forth below, we vacate the decision of the Board and remand for further proceedings consistent with this opinion.

## BACKGROUND

Mr. Stone was employed as a GS–12 bank examiner in the FDIC's Division of

Supervision, Englewood, Colorado. Mr. Stone submitted applications for approved leave using Standard Form 71s on four occasions. He admitted that he signed these forms with the names of doctors who were purportedly excusing the absences that he requested.

The FDIC decided to begin removal proceedings against Mr. Stone for the submission of false requests for leave. The FDIC provided Mr. Stone with notice of the charges of misconduct upon which his removal would be based by letter dated July 22, 1996. The letter stated that Mr. Stone was alleged to have forged four leave slips. The letter explained that Mr. Stone's prior 30–day suspension and a previous letter of reprimand would also be considered. The letter stated that Mr. Stone had "the right to review the material relied on to support this proposed [removal]" and would be "granted a reasonable amount of official time to review the material relied upon to support this [removal], to secure affidavits, and to prepare an answer." The letter also stated that "[f]ull and careful consideration will be given to any reply." Counsel for Mr. Stone requested that the FDIC send him all the materials upon which the FDIC intended to rely in its attempt to discipline Mr. Stone.

The official with the duty to decide whether Mr. Stone had committed such improper acts and to decide the level of the appropriate penalty (the "deciding official") was given instructions by the FDIC outlining his general responsibilities. These instructions included the following:

> Your decision should be based *solely* on the notice of charges and the supporting documentation that is contained in the file, *and not on any additional information* . . . .

> The document file and your deliberations on the case are to be treated as confidential. You are not, however, expected to decide the matter in isolation. Nevertheless, to prevent due process complications in the case, you are encouraged to confine your discussion about the case as much as possible. Insofar as technical advice is sought or there is a question regarding information contained in the document file, the matter can be discussed with the representative of Labor and Employee Relations Section . . . .

> Prior to making your decision, you may wish to discuss this matter with someone on your senior staff other than the recommending official(s). That person must be given clear instructions about the confidentiality of the matter and the fact that no information other than that which is in the file is to be discussed or considered in connection with the case.

> The matter may be discussed with other individuals (including the recommending officials) *on a limited basis*. Before you do so, you may wish to coordinate with the Labor and Employee Relations Section representative or the Legal Division representative in order to avoid due process problems. In particular, those contacts *must not* involve the introduction of new information about the case.

(No emphasis added.)

After considering Mr. Stone's case, the deciding official recommended removal and Mr. Stone's employment with the FDIC was thereafter terminated under Chapter 75 of Title 5 of the United States Code. After his removal and the filing of his appeal to the Board, Mr. Stone made a second request for relevant documents. In response to this request, Mr. Stone discovered that an *ex parte* memorandum from the official recommending his dismissal (the "proposing official") had been sent to the deciding official. Mr. Stone also discovered that the deciding official

received a second *ex parte* memorandum from another FDIC official urging Mr. Stone's removal. In an affidavit, the deciding official stated that he would have concluded that Mr. Stone should be removed whether or not he had seen the *ex parte* memo from the proposing official.[1]

Mr. Stone appealed the FDIC's decision to the Board, alleging, among other things, that harmful error occurred in the removal proceeding because the deciding official received *ex parte* communications. In response to this argument, the AJ explained:

> I find nothing erroneous in that fact [that the proposing official had *ex parte* communications with the deciding official]; indeed, the purpose of a reply is for the appellant to present his side of the case for the agency's consideration. There is no statutory or regulatory prohibition against ex parte communications between the proposing and deciding officials and other officials or persons during the agency's decision-making process. *Andersen v. Department of State,* 27 M.S.P.R. 344, 348 (1985), *aff'd,* 790 F.2d 91 (Fed.Cir.1986) (Table).

The AJ did not apply any type of "harmless error" test with respect to the *ex parte* communications.

On appeal, Mr. Stone argues that the *ex parte* memoranda improperly introduced new, highly prejudicial, and unchallenged charges and information against him. Mr. Stone argues that the introduction of these *ex parte* memoranda was a violation of his right to due process and should automatically void his removal. In the alternative, Mr. Stone urges us to adopt an "objective" harmless error test to determine whether consideration of these *ex parte* memoranda constituted an error that should void the removal proceeding. The objective test would not focus on whether the deciding official actually would have reached the same result if there had been no procedural defect, but rather would focus on whether the error is so likely to have prejudiced the deciding official that the proceeding should be void.

The government argues that *Andersen*'s subjective test for harmless error applies in this case and that Mr. Stone has failed to submit evidence sufficient to meet this test. This subjective test proposed by the government requires the disciplined federal employee to prove the following:

> 1. that new allegations or information were introduced which the appellant has not had the benefit of reviewing or responding to;
> 2. that the deciding official *was influenced* by the new allegations or information in his or her decision making process; and
> 3. that the procedural error of considering the new allegations or information likely had a harmful effect upon the outcome before the agency.

*Andersen,* 27 M.S.P.R. at 349 (emphasis added).

The government argues that the information contained in the *ex parte* memoranda was not "new" and that the deciding official has testified that he would have recommended removal regardless of the *ex parte* communication. The government, therefore, urges us to use a subjective test to find that any procedural error was harmless. The government does not respond to Mr. Stone's constitutional due process arguments.

## DISCUSSION

### A. Standard of Review

We must affirm the decision of the Board unless it is arbitrary, capricious, an

---

1. It appears that the second memorandum may have been attached to the proposing official's memorandum. It is unclear from the record before us why the AJ's opinion and the deciding official's affidavit only refer to the proposing official's memorandum and not the other memorandum. In any event, the government does not dispute on appeal that the deciding official received the second *ex parte* memorandum.

abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994). In this case, we vacate the Board's decision because its analysis of the *ex parte* communications was not in accordance with the requirements of the Due Process Clause of the Fifth Amendment.

## B. Analysis

Mr. Stone's federal constitutional due process claim depends on his having a property right in continued employment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).[2] "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Roth*, 408 U.S. at 576, 92 S.Ct. 2701. These property interests come in a variety of forms, including public employment. *See id.* If Mr. Stone does possess such a property interest, then the government cannot deprive him of this property without due process. *See Loudermill*, 470 U.S. at 538, 105 S.Ct. 1487.

Property interests are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source [such as a statute].…" *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* If the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment. *See Loudermill*, 470 U.S. at 538, 105 S.Ct. 1487 (finding that Ohio statute providing that public employee was entitled to retain position for good behavior and efficient service and conditioning dismissal on showing of malfeasance or nonfeasance created a property interest in continued employment); *Connell v. Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) (public teacher hired without tenure or formal contract, but with clearly implied promise of continued employment, had property interest); *Slochower v. Board of Higher Educ.*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (public college professor dismissed from office held under tenure provisions had a property interest in continued employment); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (public college professors and staff members dismissed during terms of their contracts had property interests in continued employment); *see also Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (public professor would have protectable interest if college

---

**2.** Although many of the cases in this section discuss the Due Process Clause of the Fourteenth Amendment, the procedural safeguards afforded by the Fourteenth Amendment are no less stringent than those which must be provided under the Due Process Clause of the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A Federal agency may not, consistently with the Fifth Amendment Due Process Clause, do that which a State is forbidden to do by the Fourteenth Amend-

ment Due Process Clause. *Cf. Bolling v. Sharpe*, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (noting that it would be unthinkable for the same Constitution to impose a lesser duty on the Federal government than on state governments); *Hurd v. Hodge*, 334 U.S. 24, 35–36, 68 S.Ct. 847, 92 L.Ed. 1187 (1948) (noting that public policy of the United States cannot manifest a lesser concern for the protection of basic rights than the individual states).

had a de facto tenure program and professor had tenure under this program).

■ On the other hand, if the public employee is hired for a limited appointment or is at will, then the employee does not have a property interest in continued employment. *See Roth,* 408 U.S. at 578, 92 S.Ct. 2701 (where public employee was explicitly appointed for only one year, employee had no property interest in continued employment; employee was not entitled to contract renewal and no statute or policy secured an interest in re-employment); *Bishop v. Wood,* 426 U.S. 341, 346–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (statute created at will employment relationship, as interpreted by relevant state courts, and therefore public employee did not have property interest in continued employment).

■ In this case, the federal statutory employment scheme plainly creates a property interest in continued employment. Mr. Stone was a civil service employee who could not be dismissed except for cause or unacceptable performance. *See* 5 U.S.C. § 7513(a) (1994) (agency may take an action against an employee only for such cause as will promote efficiency of the service); 5 U.S.C. § 4303 (1994) (agency may reduce in grade or remove an employee for unacceptable performance). The statute therefore entitled Mr. Stone to continue in his position unless the agency could show he needed to be removed for cause or unacceptable performance. Mr. Stone was not an at will employee or hired for a limited term. As this Court has explained previously, "an employee, as defined by 5 U.S.C. § 7501, has a property right in his continued employment." *King v. Alston,* 75 F.3d 657, 661 (Fed.Cir.1996).[3]

■ The next question we face is what process is due Mr. Stone before he

can be deprived of his property interest. We begin by noting that his property interest is not defined by, or conditioned on, Congress' choice of procedures for its deprivation. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487. In other words, § 7513 and § 4303 do not provide the final limit on the procedures the agency must follow in removing Mr. Stone. Procedural due process requires "that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Id.* Congress need not confer a property interest in public employment. However, once it does confer such an interest, it may not remove it without constitutional safeguards. *See id.*

■ The process due a public employee prior to removal from office has been explained in *Loudermill.* The Supreme Court has stated:

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." . . . This principle requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. . . .

[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. . . .

The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writ-

---

**3.** An "employee" is defined under 5 U.S.C. § 7501 as "an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or

who has completed 1 year of current continuous employment in the same or similar positions under other than a temporary appointment limited to 1 year or less."

ing, why proposed action should not be taken is a fundamental due process requirement.... *The tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story* .... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 542–46, 105 S.Ct. 1487 (emphasis added). The Supreme Court expressly noted that the need for a meaningful opportunity for the public employee to present his or her side of the case is important in enabling the agency to reach an accurate result for two reasons. First, dismissals for cause will often involve factual disputes and consideration of the employee's response may help clarify such disputes. In addition, even if the facts are clear, "the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* at 543, 105 S.Ct. 1487.

Thus, the Supreme Court expressly recognized that the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate. Even the leading Board decision regarding the evaluation of the appropriateness of disciplinary penalties explains that

aggravating factors on which the agency intends to rely for imposition of an enhanced penalty, *such as a prior disci-*

*plinary record,* should be included in the *advance notice of charges so that the employee will have a fair opportunity to respond* to those alleged factors before the agency's deciding official, and the decision notice should explain what weight was given to those factors in reaching the agency's final decision.

*Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280, 304 (1981) (emphasis added).

The introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond. When deciding officials receive such *ex parte* communications, employees are no longer on notice of the reasons for their dismissal and/or the evidence relied upon by the agency. Procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information.[4] It is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process. Our system is premised on the procedural fairness at each stage of the removal proceedings. An employee is entitled to a certain amount of due process rights at each stage and, when these rights are undermined, the employee is entitled to relief regardless of the stage of the proceedings.

However, not every *ex parte* communication is a procedural defect so

4. Our analysis is not in conflict with our prior cases, *Depte v. United States,* 715 F.2d 1481 (Fed.Cir.1983) and *Grover v. United States,* 200 Ct.Cl. 337 (1973). Those two cases contained language to the effect that pre-hearing *ex parte* communications were permissible. *See Depte,* 715 F.2d at 1484 and *Grover,* 200 Ct.Cl. at 350. Those cases, however, were

decided prior to the Supreme Court's decision in *Loudermill,* which delineated an employee's due process rights with respect to pre-hearing terminations. To the extent *Depte* and *Grover* are inconsistent with *Loudermill,* they can no longer serve as binding precedent.

substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding. Only *ex parte* communications that introduce new and material information to the deciding official will violate the due process guarantee of notice. In deciding whether new and material information has been introduced by means of *ex parte* contacts, the Board should consider the facts and circumstances of each particular case. Among the factors that will be useful for the Board to weigh are: whether the *ex parte* communication merely introduces "cumulative" information or new information; whether the employee knew of the error and had a chance to respond to it; and whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. Ultimately, the inquiry of the Board is whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances.

 If the Board finds that an *ex parte* communication has not introduced new and material information, then there is no due process violation. On the other hand, if the Board finds new and material information has been received by the deciding official by means of *ex parte* communications, then a due process violation has occurred and the former employee is entitled to a new constitutionally correct removal procedure. As we have explained previously, when a procedural due process violation has occurred because of *ex parte* communications, such a violation is not subject to the harmless error test. *See Sullivan v. Department of the Navy*, 720 F.2d 1266, 1274 (Fed.Cir.1983); *Ryder v. United States*, 218 Ct.Cl. 289, 585 F.2d 482, 488 (1978) (refusing to apply harmless error test: "[W]here a serious procedural

curtailment mars an adverse personnel action which deprives the employee of pay, the court has regularly taken the position that the defect divests the removal (or demotion) of legality, leaving the employee on the rolls of the employing agency and entitled to his pay until proper procedural steps are taken toward removing or disciplining him. In that situation, the merits of the adverse action are wholly disregarded."); *Camero v. United States*, 179 Ct.Cl. 520, 375 F.2d 777, 780 (1967).

In this case, because Mr. Stone had a property interest in continued employment with the FDIC, he was entitled by the Due Process Clause to meaningful notice of the reasons for his removal and a meaningful opportunity to respond. Because of the *ex parte* contacts between FDIC officials and the deciding official, Mr. Stone's procedural due process rights may have been undermined. *See Sullivan*, 720 F.2d at 1274 (finding that *ex parte* contacts were not only unfair, but a denial of rights under due process clause of the Constitution). We therefore must remand this case to the Board to determine, in the first instance, whether the *ex parte* communications in this case undermined Mr. Stone's procedural due process right to meaningful notice and an opportunity to respond. Specifically, the Board must analyze whether the *ex parte* communications in this case introduced new and material information to the deciding official. If the Board finds the communications did introduce such new and material information, Mr. Stone should be afforded a constitutionally correct removal procedure.

 In closing, we make two final observations. First, we express no opinion as to whether the *ex parte* communications in this case constituted new and material information that undermined Mr. Stone's procedural due process rights. Second, we note that the Due Process Clause only provides the minimum process

to which a public employee is entitled prior to removal. Public employees are, of course, entitled to whatever other procedural protections are afforded them by statute, regulation, or agency procedure which is in addition to the protections afforded by the Constitution.

### CONCLUSION

We therefore vacate the Board's decision and remand the case for proceedings consistent with this opinion.

*VACATED* AND *REMANDED*.

### COSTS

Each party to bear its own costs.