Elias GARZA, III, Petitioner,

v.

**DEPARTMENT OF JUSTICE,**
Respondent.

No. 00–3203.

United States Court of Appeals,
Federal Circuit.

March 1, 2001.

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Mr. Elias Garza, III petitions for review of the decision of the Merit Systems Protection Board, Docket No. DA0752980355–I–1, affirming his dismissal by the Department of Justice following a positive random drug test. We *affirm* the decision of the Board.

*Background*

Mr. Garza was employed as a Deputy United States Marshall in the Western District of Texas. On October 22, 1997 he underwent a random drug screening and tested positive for cocaine. After a second test of the urine sample and an interview by a physician to rule out other possible causes for the positive result, the agency removed Mr. Garza from his position. On appeal the Board found that the agency had proved that the sample was collected from Mr. Garza and that it had tested positive for cocaine, that there was a nexus between the charge and the efficiency of the service, and that the penalty of removal was reasonable under the circumstances. This petition followed.

*Discussion*

Mr. Garza argues that the agency violated its collection procedures, which are de-

signed to assure the source of test samples. In particular, Mr. Garza argues that the technician asked him to sign the labels before they were affixed to seal the specimen container, and did not inform him that he was to maintain visual contact with his specimen until it had been labeled and sealed.

The Administrative Judge received the testimony of the technician who had collected the sample as well as several agency employees who were tested that day. The AJ found that Mr. Garza "showed that [the technician] may have violated the agency's drug-testing policy and regulations by not notifying him that he should keep the specimen in his view at all times, and by filling out the labels before the actual test," but that any error was harmless because Mr. Garza "was informed of the procedures, and he either decided not to monitor his urine sample, or he fabricated the incidents when he said that he had not watched the processing of his specimen." This credibility determination by the AJ, on the testimony of witnesses, warrants great weight.

We agree that any error that may have occurred was harmless. Mr. Garza was a Deputy United States Marshall with extensive training and experience in investigating drug-related offenses and handling evidence. Given this level of training and experience, he has not convinced us that a failure to remind him to maintain continuous visual contact with his specimen is other than harmless error, particularly when the only lapse, according to Mr. Garza, was when he turned away to read a cartoon posted on a bulletin board. Although we do not condone even "harmless" violations of the procedures for the handling of drug-test specimens, it is not reasonable to permit a law enforcement offi-

cer to invalidate his drug test through his asserted voluntary omission of meticulous monitoring of the specimen.

Mr. Garza also argues that agency regulations were violated and he was denied due process when the report of an agency investigation into the procedure for his specimen was not provided to him in advance of the agency's decision. The investigation was apparently prompted by his response to the notice of proposed removal, in which he challenged the procedure for the specimen that he provided. Mr. Garza was not given the report of the investigation until after the agency's decision to remove him.

Mr. Garza cites 5 C.F.R. § 752.404(b), which provides that the notice of proposed removal "inform the employee of his or her right to review the material which is relied on to support the reasons for action given in the notice." This regulation requires that Mr. Garza have access to the evidence supporting his proposed removal, which was the positive drug test. The agency's subsequent investigation was made in response to Mr. Garza's answer to the notice of proposed removal; the report of that investigation may have been a factor in the actual removal, but it did not exist at the time of the proposed removal. Although the better procedure would have been to provide the report to Mr. Garza promptly when it was obtained, the Regulation was not, technically, violated.

Mr. Garza states that this procedure constitutes a constitutional violation, citing *Stone v. Federal Deposit Insurance Corp.*, 179 F.3d 1368 (Fed.Cir.1999). In *Stone* this court held that the *ex parte* communication of new and material information by the agency's investigating official to the agency's deciding official could

constitute a violation of the employee's constitutional right to due process of law. However, the court in *Stone* made clear that not all *ex parte* communications are due process violations, and that it is necessary to "consider the facts and circumstances of each particular case." *Id.* at 1377. The court must consider "whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.*

Viewing the agency's investigation report as an *ex parte* communication because it was not made available to Mr. Garza before the actual removal, Mr. Garza has not demonstrated that the report prejudiced him. The report of the investigation is not the evidence upon which the agency proposed to remove and subsequently removed Mr. Garza, but agency review of the arguments he made in challenging the proposed removal. Although Mr. Garza received this report in preparation for the MSPB hearing, at the hearing there was presented the testimony of the persons interviewed for the report, including the persons directly involved in the sample collection, as well as several other agency employees who were present at the time. Viewed as a whole, we conclude that due process was not violated by the agency's procedures.

Although much of the dispute before the Board was focused on this report of the investigation into the collection procedure, only portions of that report were included in the Appendix to the briefs. At the court's request, this supplemental material was provided by the agency. We have reviewed this material which, with the exception of a few missing pages about which Mr. Garza does not complain, appears to be the entire report of the agency's Internal Affairs office's investigation into Mr. Garza's allegations that the collection procedure was defective. This report does not support the position that fundamental rights were violated.