NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TERRY D. DOE,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2011-3162

---

Petition for review of the Merit Systems Protection Board in case no. PH0752100292-I-1.

---

Decided: June 20, 2012

---

DEVIN MCLAUGHLIN, Langrock Sperry & Wool, of Middlebury, Vermont, argued for petitioner.

ANUJ VOHRA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

---

Before NEWMAN, CLEVENGER, and LINN, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

The petitioner, Terry D. Doe, appeals the final order of the Merit Systems Protection Board ("Board") sustaining his removal. *Doe v. United States Postal Service*, No. PH-0752-10-0292-I-1, slip op. (M.S.P.B. Apr. 28, 2011) ("*Final Decision* (Apr. 28, 2011)"). Because we agree that there were procedural errors in the administrative process, we vacate and remand for further proceedings consistent with this opinion.

I

Doe was a twenty-four-year employee of the United States Postal Service. He was employed by the Postal Service as a full-time letter carrier at the Essex Junction Post Office in Essex Junction, Vermont, until his termination on March 14, 2010. Doe's termination resulted from an incident that took place on November 21, 2009, in the office of his then-supervisor, Jamie Good, arising from a dispute about Doe's uniform. During the dispute, Good alleges that Doe struck him in the face, which Doe denies.

On November 21, 2009, Doe arrived for work at the Post Office and asked that he be allowed to wear a pair of non-regulation white shoes while he was in the office. Good denied that request and stated that Doe was required to wear black shoes while on duty in accordance with the Postal Service's uniform policy. Mark Hickory, the union steward, joined the conversation and urged Good to allow use of the white sneakers. Good again denied the request, directed Doe and Hickory to punch in and check their vehicles, and told Doe that he needed to be in proper footwear to start the work day.

A few minutes later, Doe came back in from checking his vehicle and was still wearing the white sneakers.

Good asked Doe to come into his office so that they could discuss the matter further. Doe asked that Hickory be allowed to accompany him, which Good allowed. Once in Good's office, Good explained that Doe had failed to follow instructions by not wearing proper footwear.

At this point, according to Good, Doe approached Good and pointed his finger in Good's face; Good attempted to leave his office, and as he was walking out the door, he was either pushed or bumped by Doe. Then, Good allegedly turned around and asked Doe what he was doing, at which time Doe allegedly punched him at the top of his face. As a result of this alleged punch, Good fell to the floor. Doe denies this version of events. He says that he never punched Good and that Good purposefully took a dive to set Doe up for punishment. Doe contends that Good was motivated to lie because of Doe's close relationship with the union, which had filed a disproportionately large number of grievances while Good was supervisor at the Essex Junction Post Office. Doe also states that he tried to help Good up from the floor.

Good notified his supervisor about the incident, and the Postal Service initiated an investigation that was conducted by Postal Inspector Patricia Quarato. Quarato either interviewed or obtained written statements from Doe, Good, Hickory, and other employees who were present at the Essex Junction post office and witnessed the incident. Good attested that he had been punched in the face, which both Doe and Hickory denied. Other Postal Service employees stated that they had either seen Doe attempt to punch Good or believed that Doe had punched Good; however, these statements were either recanted or were arguably inconsistent with Good's version of events.

On January 27, 2012, the Postal Service issued Doe a notice of proposed removal, which was based upon a

single charge of "improper conduct" arising from Doe's alleged assault of Good. The notice gave Doe and/or his representative the right to "answer this proposal within 10 days from your receipt of this letter, either in person or in writing or both, to Ricky Burleson, Postmaster, Essex Junction, 22 Essex Way, Essex Junction, VT 05452-9998, (802) 878-3085." After expiration of the ten-day period, the Postmaster would issue a final written decision as to Doe's discipline.

On February 17, 2010, the Postal Service issued its decision letter, signed by Burleson, notifying Doe that he was being removed from his position at the Postal Service based upon the charge outlined in the notice of proposed removal. However, the Postal Service did not consider a letter dated February 7, 2010, in which the president of the local union branch provided a response for Doe, because that response was not received within ten days and thus Burleson considered it untimely.

Doe timely appealed his removal to the Board. On July 30, 2010, an administrative judge issued a decision affirming the Postal Service's removal of Doe. *Doe v. United States Postal Service*, No. PH-0752-10-0292-I-1, slip op. (M.S.P.B. July 30, 2010). Doe petitioned for review by the full Board, urging *inter alia* that his February 7 response was timely mailed and that Burleson erred in failing to consider it. The Board denied Doe's petition. *Final Decision* (Apr. 28, 2011). Doe filed a timely notice of appeal to this court.

We have jurisdiction over appeals from final decisions of the Board. 28 U.S.C. § 1295(a)(4). Our task is to determine whether the Board's decision was arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Sandel v. Office of Pers. Mgmt.*, 28 F.3d 1184,

1186 (Fed. Cir. 1994). If not, then we must affirm the final ruling of the Board.

## II

On appeal, Doe argues that the Board's finding that he punched Good is not supported by substantial evidence. Doe also argues that two procedural errors were committed during the removal process: (1) that Burleson's refusal to consider his response to the notice of proposed removal violated his due process rights or, at a minimum, constituted harmful procedural error, and (2) that Burleson's consideration of a prior disciplinary incident which was not referenced in the notice of proposed removal when determining his penalty was harmful procedural error.

## A

We first address Doe's first procedural error argument. We agree that the Board erred in failing to analyze whether Burleson's failure to consider Doe's February 7 letter rises to the level of a constitutional violation. As noted above, Burleson refused to consider Doe's response to the notice of proposed removal on the ground that the response was not timely filed. Although the response was indeed received more than ten days after Doe's receipt of the notice of proposed removal, it was posted in the mails within the ten-day period. Thus, the question arises whether timely deposit in the mails satisfies the stipulated ten-day response time. Doe argues that he satisfied the ten-day period; the Postal Service argues that physical receipt of the response must have occurred within the ten-day period.

The dispute between the parties on this point is resolved by interpretation of the language used by the Postal Service in affording Doe his right to respond, as

quoted above. Had Doe exercised his right to appear in person and make his response in that fashion, we read the Postal Service's instructions as mandating that Doe make his appearance within the ten-day period. However, the instructions also afforded Doe the right to make his response in writing, directing the precise mail address to which the response should be sent. By clearly informing Doe that he could use the mails to make his response, we interpret the instructions to mean that if Doe chose to use the mails to make his response, the ten-day period would be measured from the date Doe deposited his response in the mails. Under this interpretation, Doe's response was timely, and Burleson erred in failing to consider it. The Board did not consider the ramifications of Burleson's error because it incorrectly accepted the Postal Service's argument that the timeliness of the response could only be measured by the date of physical receipt of the response by the Postal Service.

We have previously recognized that subject to certain restrictions, civil service employees have a property right in their continued employment. *See Stone v. F.D.I.C.*, 179 F.3d 1368, 1375 (Fed. Cir. 1999) (citing *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996)). The government does not dispute that Doe has a property right in his continued employment. The Supreme Court has stated that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 546 (1985). Also, "the Supreme Court expressly noted that the need for a meaningful opportunity for the public employee to present his or her side of the case is important in enabling the agency to reach an accurate result." *Stone*, 179 F.3d at 1376 (citing *Loudermill*, 470 U.S. at 543). However, *Stone* also states that not every

procedural error is "a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee." 179 F.3d at 1376-77. In this case, the Board erred in failing to analyze whether Burleson's failure to consider the February 7 letter constituted a constitutional violation or a procedural error.

Even if the Board, on remand, finds that failure to consider the February 7 letter did not rise to the level of a constitutional violation, then the Board still must decide whether the procedural violation was harmless. This is because under 5 U.S.C. § 7701(c)(2)(A), the Board may not sustain an agency decision if the employee "shows harmful error in the application of the agency's procedures in arriving at such decision." The Board's regulations define "harmful error" as an "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.56(b)(1). The focus of the harmful error analysis is "the agency and whether the agency is likely to have reached a different conclusion in the absence of procedural error. *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1282 (Fed. Cir. 2011) (emphasis omitted).

As a result, on remand, if the Board determines that Burleson's failure to consider the February 7 letter did not constitute a constitutional violation, the Board must still consider whether the procedural error constituted harmful error. If there is an indication that Burleson's consideration of the February 7 letter would have changed his decision, the matter must be remanded to the Postal Service for consideration.

Although we express no view as to whether Burleson's refusal to consider Doe's February 7 letter rises to the level of a constitutional violation or if not, whether failure

to consider the letter constituted harmful procedural error, we do note that the information Doe tried to convey went to the question of whether he committed the charged act. Also, we note that Burleson admitted that the contents of the February 7 letter, which indicated that Doe was a trained boxer, might necessitate further inquiry.

B

We now turn to Doe's argument that substantial evidence does not support the Board's conclusion that he in fact struck Good. Doe maintains, *inter alia*, that he could not have struck Good because had he done so, Good would have been prominently marked as a result of the blow since Doe is a trained boxer. Burleson admitted the fact that Doe's training, which was contained in the response Burleson rejected out of hand, might have necessitated further inquiry. Unless the Board on remand concludes that the refusal to accept Doe's response is neither constitutional nor procedural error, there is the possibility that substantial evidence would not support the Board's conclusion that Doe struck Good. For that reason, we vacate the Board's conclusion that Doe struck Good. If on remand the Board determines that Doe's constitutional and/or procedural rights have not been violated, then the Board may reinstate its conclusion that Doe in fact struck Good.

C

Doe's second procedural error argument goes to the question of whether the penalty, i.e., his removal, is procedurally infected because the deciding official considered a previous disciplinary action against Doe that was not referenced in the notice of proposed removal. This argument assumes that on remand the Board sustains its conclusion that Doe indeed struck Good, thus exposing Doe to some penalty. We agree that Burleson should not

have considered the prior disciplinary incident which was not referenced in the notice of proposed removal. The regulation governing agency procedure for removal of qualified employees, 5 C.F.R. § 752.404(g), provides that "[i]n arriving at its decision, the agency will consider only the reasons specified in the notice of proposed action." As such, it is procedural error for "an agency to rely on matters affecting the penalty it imposes without including those matters in the proposal notice." *Coleman v. Dep't of Def.*, 100 M.S.P.R. 574, 579 (2005). By failing to conduct a harmful error analysis, the Board has failed to comply with this court's decision in *Ward*, which requires the Board to analyze whether the information not contained in the notice of proposed of removal but later used in the agency's decision-making was "new and material." 634 F.3d at 1279. On remand, the Board must determine whether the procedural error requires upsetting the penalty of removal using the standard set forth in *Ward*.

## III

For the reasons discussed above, the decision of the Board is vacated and remanded for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

No costs.