NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GEORGE CAMAJ,**
*Petitioner,*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent.*

---

2013-3060

---

Petition for review of the Merit Systems Protection Board in No. NY0752110048-I-1.

---

Decided: October 16, 2013

---

THOMAS G. ROTH, Law Offices of Thomas G. Roth, of Belle Meade, New Jersey, for petitioner. With him on the brief was JOEL J. KIRKPATRICK, Kirkpatrick Law Offices, P.C., of Plymouth, Michigan.

L. MISHA PREHEIM, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director.

---

Before RADER, *Chief Judge,* LOURIE and MOORE,
*Circuit Judges.*

PER CURIAM.

George Camaj ("Camaj") appeals from the final order of the Merit Systems Protection Board (the "Board") affirming the decision by the Department of Homeland Security ("DHS") to remove him from his position as a Deportation Officer. *See Camaj v. Dep't of Homeland Sec.,* No. NY-0752-11-0048-I-1 (M.S.P.B. May 18, 2011) ("*Initial Decision*"); (M.S.P.B. Dec. 21, 2012) ("*Final Order*"). Because the Board's decision is in accordance with law and was supported by substantial evidence, we affirm.

## BACKGROUND

Camaj was employed as a Deportation Officer at the U.S. Immigration and Customs Enforcement in DHS. As a law enforcement officer, Camaj had access to and received training on the proper use of the Treasury Enforcement Communication System ("TECS"), an official government computerized information system comprised of "enforcement, inspection and intelligence records relevant to the law enforcement mission of the U.S. Customs Service and other federal agencies which it supports." *Initial Decision* at 3–4. Access to TECS is carefully controlled and strictly limited to official use.

On February 4, 2009, a criminal complaint was filed by DHS charging Camaj with intentionally accessing TECS without authorization. *Id.* at 4. Camaj entered into an agreement with the U.S. Attorney's Office for Pretrial Diversion ("PTD") and the criminal charge was later dismissed. *Id.* at 4–5. As part of the PTD agreement, Camaj admitted to having conducted 314 queries while knowing that those queries were unauthorized. *Id.* at 5. Many queries were directed to himself, his spouse, relatives, and friends, including family members with

criminal backgrounds or those who were being criminally charged or investigated. *Id.*

In addition to the 314 queries listed in the PTD agreement, Camaj conducted another 133 unauthorized queries from 2002 to 2008. In May 2010, Camaj was served with a notice of proposed removal in a letter from DHS. *Id.* at 6. Camaj provided a written reply and an oral reply. He acknowledged running queries on family members and explained that he conducted the queries out of curiosity and for personal safety so that he could distance himself from people with criminal backgrounds.

On November 16, 2010, a deciding official at DHS issued a decision sustaining charges of conduct unbecoming a law enforcement officer and misuse of an official government computer database. *Id.* After analyzing all twelve factors delineated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981), the deciding official concluded that removal was the appropriate penalty.

Camaj appealed the decision to the Board. On January 31, 2011, the deciding official was deposed by Camaj's counsel. In response to a question about whether he had spoken to Camaj's supervisors when deciding on removal, the deciding official stated that he did not recall and that there was a "very good possibility" that he had. J.A. 85. At a subsequent hearing before the Administrative Judge ("AJ"), the deciding official testified that he did not speak to Camaj's supervisors when deciding on removal. *Initial Decision* at 11. When he was cross-examined by Camaj's counsel, the deciding official explained that he could not recall with certainty during his deposition whether or not he had spoken to Camaj's supervisors.

The AJ issued an initial decision sustaining the charges and affirming that removal was the appropriate remedy. *Id.* at 2. The AJ found that the deciding official did not have any improper *ex parte* communication with

Camaj's supervisors about the penalty of removal.  *Id.* at 10, 13.  The AJ also reasoned that "if the deciding official had discussions with the appellant's supervisors at the time that he was indefinitely suspended, such information, without more, does not constitute 'new and material' information."  *Id.* at 12.

On review, the Board issued a final order affirming the AJ's initial decision and adopting it as the Board's final decision.  *Final Order* at 2.  The Board specifically noted that Camaj did not prove that the deciding official had spoken with his supervisor, and that even assuming such communication occurred, no new information was introduced and the penalty was not enhanced as a result.  *Id.* at 3.

Camaj appealed to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a Board decision is limited.  We can only set aside the Board's decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).  Moreover, we are limited to review of the administrative record.  *Rockwell v. Dep't of Transp.*, 789 F.2d 908, 913 (Fed. Cir. 1986).  The Board's decision is supported by substantial evidence "if it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Brewer v. U.S. Postal Serv.*, 647 F.2d 1093, 1096 (Ct. Cl. 1981) (internal quotation marks omitted).

Camaj raises two issues on appeal. First, Camaj asserts that his due process rights were violated because the deciding official engaged in *ex parte* communication with his supervisors regarding the penalty to be imposed on him. Second, he asserts that the deciding official misapplied the *Douglas* factors and that as a result, the penalty of removal should be mitigated to a period of suspension. We address those arguments in turn.

I.

Camaj argues that his due process rights were violated because the deciding official testified that he may have contacted Camaj's supervisors to discuss whether the supervisors could continue to trust Camaj. Camaj asserts that he did not have notice of this *ex parte* discussion, which affected the deciding official's analysis of multiple *Douglas* factors and contributed to the decision to remove him.

The government responds that Camaj's argument should be rejected because he did not establish that any *ex parte* communication had occurred. The government also argues that, even if the alleged communication had occurred, Camaj failed to demonstrate that new and material information was introduced to the deciding official or that the penalty imposed on Camaj was enhanced as a result.

We agree with the government. The federal statutory employment scheme creates a property interest in continued employment of a civil service employee. *Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir. 1999). Before being deprived of this property interest, a public employee is entitled to notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Not every *ex parte* communication in a removal proceeding is a procedural defect that violates due process, however; only *ex parte* communications that introduce "new

and material information" to the deciding official violate the due process guarantee and entitle the claimant to an entirely new administrative proceeding. *Stone*, 179 F.3d at 1376–77. In deciding whether new and material information was introduced by means of *ex parte* contacts, the ultimate inquiry is "whether the *ex parte* communication [was] so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.* at 1377.

Camaj's assertion of due process violations is premised on the assumption that an *ex parte* communication had actually occurred. However, the Board found to the contrary. *Final Order* at 3. After reviewing the record and observing live testimony at the oral hearing, the AJ concluded that the deciding official did not have any improper *ex parte* communication with Camaj's supervisors about the penalty to be imposed. *Initial Decision* at 13. We have held that "an evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are 'virtually unreviewable' on appeal." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010) (quoting *Clark v. Dep't of Army*, 997 F.2d 1466, 1473 (Fed. Cir. 1993)). The Board thus did not abuse its discretion and substantial evidence supports the Board's finding that Camaj has failed to establish any due process violation.

## II.

Camaj argues that the deciding official misapplied the *Douglas* factors. Camaj alleges that the deciding official: (1) enhanced the penalty on the false premise that Camaj engaged in the unauthorized access for an improper purpose and improperly considered the fact that Camaj was criminally charged when evaluating the seriousness of the offense; (2) based his belief that Camaj lacked

rehabilitative potential on the false premise that he failed to display contrition; (3) misapplied and distorted the consistency considerations; (4) improperly used deterrence to other employees as a justification to remove Camaj; and (5) speculated that the dismissed criminal charge against Camaj might someday cause notoriety and embarrass the agency.

The government argues that Camaj failed to demonstrate that the penalty determination was issued without consideration of the relevant *Douglas* factors or was grossly disproportionate to the offense.

We agree with the government. The Board reviews the penalty imposed by the agency only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. Choice of penalty is within the sound discretion of the employing agency and will not be overturned unless the penalty is "wholly unwarranted in light of all the relevant factors" as set forth in *Douglas*. *Guise v. Dep't of Justice*, 330 F.3d 1376, 1382 (Fed. Cir. 2003); *Douglas*, 5 M.S.P.R. at 305–06.

We have reviewed the administrative record and the Board's decision, and conclude that substantial evidence supports the Board's affirmance of the penalty imposed by DHS to remove Camaj. When reaching the removal decision, DHS weighed all relevant *Douglas* factors and the penalty does not exceed the limits of reasonableness and is within the sound discretion of the agency. Substantial evidence thus supports the Board's decision.

We have considered Camaj's remaining arguments and conclude that they are without merit. For the foregoing reasons, the decision of the Board is affirmed.

**AFFIRMED**

COSTS

No costs.