# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BRENDA D. HICKS,<br>    Appellant, | DOCKET NUMBER<br>AT-0752-16-0105-I-1 |
| v. | |
| DEPARTMENT OF AGRICULTURE,<br>    Agency. | DATE: September 22, 2016 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Ronnie Hubbard, Jackson, Mississippi, for the appellant.

Joshua N. Rose, Esquire, and Hyacinth Michelle Clarke, Washington, D.C.,
    for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### REMAND ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal on due process grounds.  For the reasons discussed below, we GRANT the agency's petition for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

## BACKGROUND

¶2    Effective October 29, 2015, the agency removed the appellant from her position as a Food Inspector based on a single charge of conduct prejudicial to the best interests of the service supported by two specifications.[2]  Initial Appeal File (IAF), Tab 7 at 14‑19, 25‑26.  In specification one, the agency alleged that, on April 30, 2014, after the appellant's supervisor, Dr. R.L., informed her that he had denied her leave request, the appellant called Dr. R.L. over to her vehicle at the end of her shift, pulled what appeared to be a gun from under the seat of the car, and showed it to him.  *Id*. at 25.  In specification two, the agency alleged that, on May 6, 2014, the appellant came to the door of an agency office, asked for Dr. R.L., and then pointed her finger at him and made a noise as if she were firing a gun.  *Id*.

¶3    The appellant filed a Board appeal challenging her removal and raised affirmative defenses of a denial of due process in connection with an agency investigation of the charges, harmful procedural error, and discrimination based on race.  IAF, Tab 1 at 2, Tab 13 at 4, Tab 15 at 7‑8, Tab 20 at 2‑7.  After holding the requested hearing, the administrative judge issued an initial decision reversing the appellant's removal on due process grounds not raised by the appellant, without addressing whether the agency proved the charge.  IAF, Tab 22, Initial Decision (ID).  Based on the deciding official's testimony, he found that the deciding official considered the appellant's misconduct as "threats," an offense different from and more serious than the charged offense of

---

[2] In the proposal notice, the agency also proposed the appellant's removal based on an additional charge of failure to complete training as a condition of employment.  Initial Appeal File, Tab 7 at 24‑25.  However, the deciding official did not sustain that charge, and it is not at issue in this appeal.  *Id*. at 15.

conduct prejudicial to the best interests of the service. ID at 4‑5. He further found that the deciding official's consideration of the appellant's conduct as threats constituted an ex parte communication that introduced new and material information to which the appellant was not afforded an opportunity to respond. ID at 5‑7.

¶4    The administrative judge declined to address the appellant's affirmative defense of harmful procedural error, having reversed her removal on due process grounds, but found that she failed to prove her affirmative defense of discrimination based on race. ID at 8‑9. He ordered the agency to cancel the appellant's removal, restore her to duty, provide her with back pay, and provide interim relief in accordance with 5 U.S.C. § 7701(b)(2)(A), if either party filed a petition for review of the initial decision. ID at 10‑11.

¶5    The agency has filed a petition for review of the initial decision, in which it argues that the administrative judge erred in finding that it violated the appellant's due process rights. Petition for Review (PFR) File, Tab 1. The appellant has responded in opposition to the petition for review, and the agency has replied. PFR File, Tabs 4‑5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency has substantially complied with the interim relief order.

¶6    When, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that it has complied with the interim relief order. 5 C.F.R. § 1201.116(a). To establish compliance with an interim relief order, all that an agency must accomplish by the petition for review filing deadline is to take appropriate administrative action, such as executing a Standard Form 50 (SF−50), which will result in the issuance of a paycheck for the interim relief period. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 13 (2014); *Salazar v. Department of Transportation*, 60 M.S.P.R. 633, 639 (1994).

Reasonable, inadvertent delays in issuing pay due under an interim relief order do not demonstrate noncompliance with the order. *Archerda*, 121 M.S.P.R. 314, ¶ 13; *cf. Bradstreet v. Department of the Navy*, 83 M.S.P.R. 288, ¶¶ 11‑13 (1999) (dismissing an agency's petition for review based on its 8‑month delay in providing an appellant with back pay required by an interim relief order).

¶7        The agency's petition for review itself was not accompanied by a certification of compliance, as required by the Board's regulations. 5 C.F.R. § 1201.116(a).  After the agency filed its petition for review, the appellant filed a pleading asserting that the agency failed to comply with the interim relief order and requesting that the Board ensure compliance with the order.  PFR File, Tab 3 at 4.  In response, the agency submitted a certification of compliance and a copy of an SF-50, issued 7 days before the agency filed the petition for review, which reflected that the agency had reinstated the appellant, effective the date of the initial decision.  PFR File, Tab 5 at 7‑8.  In an accompanying pleading, the agency represented that, pursuant to 5 U.S.C. § 7701(a)(2)(A)(ii), it determined that it would be unduly disruptive to return the appellant to work and that it placed her on administrative leave and mailed paychecks to her shortly after filing the petition for review.  *Id*. at 5.

¶8        The Board's regulations do not provide for a motion for compliance with an interim relief order, and the Board will not entertain such a motion. *Forma v. Department of Justice*, 57 M.S.P.R. 97, 102, *aff'd*, 11 F.3d 1071 (Fed. Cir. 1993); 5 C.F.R. § 1201.182(a)‑(b).  However, if an appellant believes that an agency has not complied with an interim relief order, she may move to dismiss the agency's petition for review. *Forma*, 57 M.S.P.R. at 102; 5 C.F.R. § 1201.116(d).  If an agency fails to establish compliance with an interim relief order, the Board has the discretion to dismiss its petition for review, but need not do so. *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶¶ 11‑12 (2013); 5 C.F.R. § 1201.116(e).

¶9    The appellant has not specified the nature of the agency's alleged noncompliance with the interim relief order, and, based on the evidence submitted by the agency, we discern no basis to dismiss the agency's petition for review. Therefore, to the extent that the appellant's pleading asserting that the agency failed to comply with the interim relief order may be construed as a motion to dismiss the agency's petition for review, we deny the motion.

The administrative judge erred in finding that the agency violated the appellant's due process rights.

¶10    Pursuant to *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279–80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376–77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when she relies upon new and material ex parte information as a basis for her decision on the merits of a proposed charge or the penalty to be imposed. *See Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 8 (2013).  The Board has held that this analysis applies not only to ex parte communications introducing information that previously was unknown to the deciding official, but also to information personally known and considered by the deciding official, if that information was not included in the notice of proposed removal to the appellant.  *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 10 (2011). When a deciding official considers either type of information, the employee is no longer on notice of portions of the evidence relied upon by the agency, resulting in a potential constitutional violation.  *Id*.

¶11    Even assuming without finding that the deciding official relied on ex parte information when she considered the appellant's alleged misconduct as a threat charge, ID at 4‑6, the proposal notice informed the appellant that the agency charged her with conduct prejudicial to the best interests of the service.  This contains a lesser burden of proof than a threat charge because it does not require an agency to establish that the appellant intended to cause harm or that any listeners felt threatened by the alleged statements or actions at issue.  IAF, Tab 7

at 25; *see Wiley v. U.S. Postal Service*, 102 M.S.P.R. 535, ¶ 10 (2006) (finding that an improper conduct charge contains a lesser burden of proof than a threat charge), *aff'd*, 218 F. App'x 1001 (Fed. Cir. 2007); *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 200, 204 (1997) (finding that an administrative judge erred in requiring an agency to demonstrate the elements of a threat charge when it charged an appellant with "improper conduct" based on threatening remarks towards his supervisor); *see also Metz v. Department of the Treasury*, 780 F.2d 1001, 1004 (Fed. Cir. 1986) (finding that, in deciding whether statements constitute threats, the Board is to apply the reasonable person criterion, considering the listeners' reactions and apprehensions, the wording of the statements, the speaker's intent, and the attendant circumstances).

¶12    The deciding official testified that, in deciding to remove the appellant, she considered that: (1) the appellant had made "a threat to a colleague at the workplace"; (2) the gun at issue in the charge was used as "a threat to another employee"; (3) the gun was "perceived as a threat"; and (4) "showing a gun is a threat". IAF, Tab 21, Hearing Compact Disc (HCD) (testimony of the deciding official). She further testified that the appellant's removal was consistent with the agency's treatment of employees who convey "threats with deadly weapons such as firearms and knives," and that the appellant's removal was necessary because the "threat level was so high." *Id*. We have considered the agency's arguments on review that the deciding official's testimony pertained solely to the severity of the alleged misconduct at issue in the charged offense of conduct prejudicial to the best interests of the service, and find them unpersuasive. PFR File, Tab 1 at 5, 10, 12‑16. We agree with the administrative judge that the deciding official considered the appellant's alleged misconduct as a threat charge. ID at 4‑5.

¶13    Again, not necessarily finding as such, we note that not every ex parte communication rises to the level of a due process violation; only ex parte

communications that introduce new and material information to the deciding official are constitutionally infirm. *Stone*, 179 F.3d at 1376‑77; *Lange*, [119 M.S.P.R. 625](), ¶ 8. In *Stone*, the U.S. Court of Appeals for the Federal Circuit identified the following factors to be used to determine whether ex parte information is new and material: (1) whether the ex parte communication introduces cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. 179 F.3d at 1377. Ultimately, the Board's inquiry in deciding whether an employee's due process rights have been violated is "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id*.

¶14 Here, we agree with the agency that the administrative judge erred in finding that the allegedly ex parte information considered by the deciding official was new and material. PFR File, Tab 1 at 7, 10, 12‑16. Although the agency did not charge the appellant with making a threat, the penalty section of the proposal notice quoted agency policies regarding firearms and workplace violence, which prohibited threats, and addressed the same type of alleged misconduct that formed the basis for the appellant's removal. IAF, Tab 7 at 26‑27.

¶15 Specifically, the proposal notice quoted an agency policy on firearms at the worksite, which stated:

> It is Agency policy to protect employees from assault, harassment, interference, intimidation, or **threats** related to, or as the result of, performing their official duties and responsibilities, whenever possible. The Agency will not tolerate careless or indiscriminate incidents involving firearms or references to firearms (examples: joking, improper handling or storage, horseplay, or belligerent or hostile exchanges involving firearms). Actions or statements referencing firearms used to assault, harass, interfere with,

intimidate, or **threaten** employees are unacceptable and will not be tolerated.

*Id*. at 26 (emphasis added).

The proposal notice also quoted an agency policy on workplace violence, which stated:

It is the Agency's policy that the workplace environment must remain free of behavior, action, or language causing or contributing to workplace violence. Assault, harassment, interference, intimidation, or **threat** by or against any Agency employee or client at the worksite is unacceptable and will not be tolerated.

It is a violation of Agency policy to have, use, or **threaten** use of a firearm, explosive, or other dangerous weapons at a worksite or in a vehicle used for official business . . . . It is inappropriate to refer to or **threaten** the use of these items in a violent act or manner contrary to their normal use. Such a **threat** is unacceptable and will not be tolerated.

*Id*. at 27 (emphasis added). Thus, the agency policies quoted in the penalty section of the proposal notice used the word "threat" or "threaten" no less than six times. *Id*. at 26‑27. Under these circumstances, we find that, although the agency did not charge the appellant with making a threat, the proposal notice did, or should have, put the appellant on notice that the agency viewed her alleged misconduct as analogous to a threat. Therefore, we find that, to the extent the information relied on by the deciding official may have been ex parte, it was merely cumulative. *See Stone*, 179 F.3d at 1377.

¶16     We further disagree with the administrative judge's finding that the appellant's response to the proposal notice reflected that she was unaware that the agency considered her alleged misconduct as a threat. ID at 6. In the appellant's response, she asserted that the alleged misconduct at issue in specification two was a misguided attempt at humor, indicating that she was aware that the threatening nature of the alleged misconduct was at issue. IAF, Tab 7 at 21‑22; *see Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶¶ 10‑11 (2014) (finding that an agency did not violate an appellant's due process rights

when she raised and responded to alleged ex parte information in replying to a proposal notice). For these reasons, regardless of whether the purported ex parte information at issue was of the type likely to result in undue pressure, we find that the other factors do not weigh in the appellant's favor and do not warrant a finding that the alleged ex parte information was so substantial and so likely to cause prejudice that no employee could fairly be required to be subjected to a deprivation of property under the circumstances. *See Stone*, 179 F.3d at 1377.

¶17     Therefore, we vacate the initial decision finding that the agency violated the appellant's due process rights and remand the case to the regional office. On remand, the administrative judge shall conduct any further proceedings necessary to make findings regarding the charge, the appellant's affirmative defenses, nexus, and the penalty, including continuing the hearing, if appropriate. Thereafter, the administrative judge shall issue a new initial decision. In the new initial decision, the administrative judge may adopt his original finding regarding the appellant's affirmative defense of discrimination based on race, if he finds that it is supported by any additional evidence that may be developed on remand. *See* ID at 8‑10.

## ORDER

¶18     For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.