**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SCOTT SNYDER,
　　　　　Appellant,

　　　v.

DEPARTMENT OF THE ARMY,
　　　　　Agency.

DOCKET NUMBER
DC-0752-14-0964-I-1

DATE: September 28, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christopher D. Vaughn, Esquire, Decatur, Georgia, for the appellant.

Therese M. Novell, Esquire, Warren, Michigan, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1　　The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to address the mitigating factors in the penalty determination, we AFFIRM the initial decision.

¶2    Prior to his removal, the appellant was a Small Arms Repairer, WG-6610-08, at the U.S. Army Tank-Automotive and Armaments Command (TACOM) at Fort Lee, Virginia. Initial Appeal File (IAF), Tab 6 at 24. The agency proposed his removal based on four charges: (1) failing to follow supervisory instructions; (2) unauthorized entry by use of force into the TACOM Fleet Management Expansion (FMX) small arms room; (3) lack of candor; and (4) being unable to perform the essential functions of his position as a result of being banned from the on-site small arms rooms. *Id.* at 26, 40. The charges originally arose from an incident on April 1, 2013, wherein a coworker witnessed the appellant taking pictures with his cell phone inside the 23rd Quartermaster Brigade small arms room. *Id.* at 40 & n.1. On April 8, 2013, he was barred from unaccompanied access to the TACOM FMX small arms room, which is a restricted area, and his key to that room was taken. *Id.* at 40; IAF, Tab 11 at 11. On May 16, 2013, however, the appellant, unaccompanied, entered the TACOM FMX small arms room after forcibly shaking the gate leading to the room. IAF, Tab 6 at 40-41. He later made misleading statements to management regarding his entry to the room. *Id.* at 41. The agency found that, because he was banned from accessing

on-site small arms rooms, he could no longer perform the essential duties of his position. *Id.* at 41-43.

¶3    After the appellant responded to the proposed removal, the deciding official sustained the charges and found that removal was the appropriate penalty. *Id.* at 26-34. The appellant then filed this adverse action appeal, asserting that the agency retaliated against him for whistleblowing and violated his due process rights. IAF, Tabs 1, 21-22. He waived his right to a hearing. IAF, Tab 18 at 4. Based on the written record, which included several declarations made under penalty of perjury, IAF, Tab 29 at 38-64, the administrative judge sustained all charges, IAF, Tab 37, Initial Decision (ID) at 2-22. The administrative judge rejected the appellant's due process argument and found that he failed to prove that his disclosure played any role in the personnel action, specifically that he failed to present evidence of *knowledge* on the part of the accused management officials sufficient to conclude that his alleged disclosure contributed in any way to the personnel action. ID at 10, 29. The administrative judge further found that the penalty of removal was reasonable and supported the efficiency of the service. ID at 29-32.

The appellant has not shown that the agency violated his due process rights.

¶4    On review, the appellant argues that the agency failed to give him a copy of the April 8, 2013 memorandum upon which the deciding official relied in deciding to remove him, thus violating his due process rights. Petition for Review (PFR) File, Tab 1 at 7-10; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) (finding that procedural due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers new and material information; therefore, it is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process). The April 8, 2013 memo authorized the appellant for "*accompanied* access to the Weapons Vault

located in BLDG 6298 Rear Access Rd Ft. Lee, VA." IAF, Tab 11 at 11 (emphasis added). The appellant argues that he first saw the memo when it was submitted with the agency file. PFR File, Tab 1 at 8; IAF, Tab 6 at 26-27. He asserts that the deciding official's consideration of the memo was both substantial and prejudicial to his case. PFR File, Tab 1 at 9. He also asserts that the memo itself does not reveal the "entire story" in his case; namely, that his access was revoked and later restored orally, and he received nothing in writing revoking his access again. *Id.* The administrative judge, however, rejected his claim that consideration of the memo violated his due process rights. ID at 10. The administrative judge found that the information in the memo was provided in the proposal notice and, even if the deciding official had considered the memo, the appellant failed to establish that the information therein was new and material. *Id.*

¶5      In determining if an ex parte communication introduces new and material information, the Board considers, among other factors, whether: (1) the ex parte communication merely introduces cumulative information or new information; (2) the employee knew of the error and had a chance to respond to it; and (3) the ex parte communication was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. Ultimately, the inquiry is whether the deciding official's consideration of the additional material was so substantial and so likely to cause prejudice that no employee could fairly be required to be subjected to a deprivation of property absent an opportunity to respond. *Id.*

¶6      The administrative judge decided this issue correctly. The appellant offered nothing to support his assertion that he failed to receive the April 8, 2013 memo, whereas the agency submitted proof that it *had* provided him with the memo during the advance notice period. Such proof included a sworn statement from

the deciding official.[2]  PFR File, Tab 3 at 25-26.  The deciding official explained and included proof that the appellant received the April 8, 2013 memo with a package of other relevant documents on May 28, 2014.  *Id.* at 25-27, 32.  The appellant acknowledged receipt of those materials and, in fact, he has referenced other documents in the same package, thus establishing that he had an opportunity to respond to the memo.  *Id.* at 26, 41-42, 44-78.  In any event, the appellant also failed to show that the memo provided any information not already included in the notice of proposed removal.  *See, e.g.*, *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 32 (2014).

<u>The appellant has not shown that the agency retaliated against him for whistleblowing.</u>

¶7        The appellant argues that the administrative judge erred in concluding that he failed to prove by preponderant evidence that the agency took action against him in retaliation for protected whistleblowing activity.  PFR File, Tab 1 at 10-15.  The appellant's alleged protected disclosures pertained to the removal of "unauthorized controlled weapons parts not acquired in accordance with Army regulations" by his work leader, S.W., from secure areas in the facility.  IAF, Tab 23 at 30.  The appellant alleged that, during March 2013, he informed his first-, second-, and third-level supervisors about S.W.'s removal of weapons parts from secure storage areas.  *Id.*  He alleged that shortly thereafter, on April 1, 2013, S.W. accused him of taking photographs inside the 23rd Quartermaster Brigade small arms room after a member of the military staff reported that he had seen the appellant doing so.  *Id.* at 31.  S.W. took the appellant's keys to the 23rd Quartermaster Brigade small arms room on April 2, 2013.  *Id.*  On April 8, 2013,

---

[2] Although the sworn statements in support of the agency's argument post-date the close of the record below, PFR File, Tab 3 at 25-26, 44-45, 63-64, the Board will consider those statements.  Based on the administrative judge's rulings, IAF, Tab 21 at 1, Tab 22, it would have been reasonable for the agency to conclude that he did not intend to consider the due process issue and thus declined to submit evidence that the appellant received the memo.

the appellant alleged, he was counseled in writing and informed that he was restricted from working in the 23rd Quartermaster Brigade small arms room. *Id.* at 31-32. The appellant alleged that on May 15, 2013, he reported in writing that the claim that he was taking photos was false and made in retaliation for whistleblowing activities.[3] *Id.* at 32.

¶8     The administrative judge considered sworn statements made by the proposing and deciding officials, as well as sworn statements from S.W. and two persons to whom the appellant asserted he had made protected disclosures. ID at 24-29. The administrative judge found that the record evidence showed that no one other than the appellant remembered anything about his alleged disclosures. ID at 28-29. The administrative judge noted that some supervisors and managers remembered that the appellant identified a different problem, which was related to the failure of some repairers to use trigger weights but was not the disclosure he claimed to have made. ID at 29. The administrative judge further noted that, even if the appellant could show that he made a disclosure regarding the improper removal of small arms parts from secure storage areas, S.W. successfully explained why the appellant had not reported any violation of a regulation or policy. *Id.*; IAF, Tab 29 at 252-53. S.W. further explained that he was unaware that the appellant had told anyone he had improperly acquired and stored parts. *Id.* The record thus does not support the appellant's contention that he made a protected disclosure regarding S.W.'s acquisition and storage of parts.

¶9     The appellant also argues that the alleged disclosures contributed to his removal by way of indirect improper influence. PFR File, Tab 1 at 12-15. The U.S. Supreme Court adopted the term "cat's paw" to describe such influence. Under the "cat's paw" theory, an agency official acting from improper animus

---

[3] The record includes a May 15, 2013 memo from the appellant's supervisor, J.C., which states that the appellant articulated his intention to submit a statement asserting that he had not committed any violation of physical security. IAF, Tab 24 at 115. We were unable to locate such a statement in the record.

influences another agency official who is unaware of the improper animus while that official is implementing a personnel action. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014) (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 415-16 (2011)). The appellant explains that the deciding official met with him only one time and subsequently relied upon statements given by S.W. and his immediate supervisor J.C. PFR File, Tab 1 at 14. Thus, appellant asserts, S.W. and J.C. were the de facto decisionmakers in his removal. *Id.* The appellant asserts that J.C. failed to correct S.W.'s wrongful acquisition and storage of the parts and thus was "motivated to collude with [S.W.] to retaliate against" him because J.C. knew his disclosures would detrimentally affect both men. *Id.* Their collusive activities, the appellant asserts, included making an unsubstantiated allegation that he was taking pictures inside of the 23rd Quartermaster Brigade small arms room. *Id.* at 14-15. According to the appellant, J.C. and S.W. thus set him up for loss of unaccompanied access to the small arms rooms and for eventual removal. *Id.*

¶10    The administrative judge, however, fully considered the record evidence and properly concluded that the appellant presented no evidence that the deciding or proposing official had any knowledge of his claimed disclosures or were influenced by any person with such knowledge. ID at 29. The appellant's allegations are thus speculative, and further, he missed the opportunity to cross-examine the agency officials to whom he allegedly made disclosures or who purportedly retaliated against him by withdrawing his hearing request.

The appellant has not shown that the findings of fact are incorrect.

¶11    The appellant asserts that the administrative judge reached incorrect findings of fact. Regarding the first charge, failing to follow supervisory instructions, the appellant asserts that he was never informed that his unaccompanied access to the TACOM FMX small arms room had been terminated. PFR File, Tab 1 at 16-17; IAF, Tab 6 at 40; ID at 3-11. He asserts that the April 8, 2013 memo regarding the revocation of his access may have been

"drafted for purposes of this appeal only," and that he was never told of the access restrictions during a counseling meeting held on April 8, 2013. PFR File Tab 1 at 15; IAF, Tab 11 at 11, Tab 30 at 7. He further asserts that the agency confused the April 8 meeting with another meeting during which his unaccompanied access to a separate secure facility, the 23rd Quartermaster Brigade small arms room, was revoked. PFR File, Tab 1 at 17. He explains that his keys to the 23rd Quartermaster Brigade small arms room were taken on April 1, 2013, when the agency generally limited unaccompanied access to the room by collecting the keys from several individuals. *Id.* The record, however, includes two sworn statements, an investigative report, and a contemporaneous memorandum establishing that the appellant's unaccompanied access to the TACOM FMX small arms room was revoked on April 8, 2013. IAF, Tab 6 at 76, Tab 29 at 73-74, 251, Tab 30 at 7.

¶12    Regarding both the first charge and the second charge, unauthorized entry to the TACOM FMX small arms room by force, the appellant argues that no eyewitness saw his alleged breach of the security gate leading to the room. PFR File, Tab 1 at 18; IAF, Tab 6 at 40-41; ID at 11-12. The appellant argues that witness T.F.'s back was turned and he did not see him open the security gate leading to the room. Instead, T.F. saw only the bent rod that the appellant allegedly used to force the lock lying on the floor by the gate. PFR File, Tab 1 at 18-19. He asserts that the only "witness" to his entry to the room, the StarPin security system zone report, "only confirms whether the front door was shut down properly." *Id.* at 19. The appellant, however, admitted entering the room, both in the sworn declaration that he submitted for the record and in his response to the agency's request for admissions. IAF, Tab 23 at 32-33, Tab 29 at 187. Additionally, a significant body of circumstantial evidence supports the finding that he entered the room, including the StarPin security system zone report, which shows that he *secured* the room. IAF, Tab 7 at 22, Tab 11 at 6, Tab 25 at 25, Tab 28 at 39.

¶13    Concerning the third charge, lack of candor, the appellant asserts that his agency manager, J.C., lacked credibility when he stated that the appellant initially denied entering the TACOM FMX small arms room on May 16, 2013. PFR File, Tab 1 at 20-21; IAF, Tab 6 at 41; ID at 16-18. The appellant argues that he never denied entering the room or tried to hide his actions from his managers or colleagues. PFR File, Tab 1 at 21. As the administrative judge noted, however, the agency need not prove intent to deceive for a lack of candor charge to be sustained. ID at 17; *see Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 10 (2012), *overruled in part on other grounds by Savage v. Department of the Army*, 2015 MSPB 51. In his sworn statement, J.C. said that the appellant denied going into the TACOM FMX small arms room when J.C. questioned him on May 17, 2013. IAF, Tab 30 at 9. J.C.'s sworn statement is consistent with his contemporaneous account of the events of May 16, 2013. IAF, Tab 28 at 49. The appellant also failed to present any evidence supporting his assertion that he had not denied entering the room. In any event, he declined the opportunity to cross-examine J.C. when he waived his right to a hearing. IAF, Tab 18 at 4.

¶14    As for the fourth charge, inability to perform the essential functions of his position, the appellant asserts that the agency has advanced a circular argument and engaged in "charge building" intended to justify his removal. PFR File, Tab 1 at 22; IAF, Tab 6 at 41-43; ID at 18-21. To the contrary, the record shows that the appellant lost access to the small arms rooms on post because agency managers and military personnel believed that his actions had posed a physical threat to the security of those facilities, thus raising concerns about his reliability as an employee. *See, e.g.*, IAF, Tab 6 at 48 ("Mr. Snyder's behavior has raised significant doubt as to his reliability and trustworthiness and has destroyed any reasonable assurance that he can be trusted with continued access to the [small arms rooms]."); *id.* at 49 ("Mr. Scott E. Snyder is no longer able to perform his duties because of physical security violations."); *see also* IAF, Tab 7 at 20

(banning the appellant from the 23rd Quartermaster Brigade small arms room for physical security violations).

¶15     The appellant also argues that he could perform the duties of his position without unescorted access to a small arms room. PFR File, Tab 1 at 22-23. The agency, however, submitted a sworn statement from T.B., the appellant's second-tier supervisor, explaining that, although he might be able to perform some work outside of the small arms rooms, his inability to access those rooms independently to obtain weapons and parts would impose difficulties, especially during emergencies or when other team members were unavailable to assist him. IAF, Tab 29 at 52-53. T.B. noted that the ban included the 23rd Quartermaster Brigade small arms room and the appellant's management lacked the independent authority to restore his access to that room. *Id.* at 53. The administrative judge thus reasonably concluded that the appellant's situation was comparable to that of an employee who had lost a credential necessary for performing the essential functions of his position. ID at 21; *cf., e.g.*, *Robinson v. Department of Homeland Security*, 498 F.3d 1361, 1365 (Fed. Cir. 2007) (loss of security clearance); *Flores v. Department of Defense*, 121 M.S.P.R. 287, ¶ 12 (2014) (loss of eligibility for a non-critical sensitive position); *Benally v. Department of the Interior*, 71 M.S.P.R. 537, 539-40, 542 (1996) (revocation of a valid state driver's license, which was required for the position).

The penalty of removal is sustained.

¶16     The appellant asserts that the agency failed to give proper consideration to the penalty factors set forth in *Douglas v. Veterans Administration*. PFR File, Tab 1 at 22-24; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). He asserts that the deciding official failed to address which of the mitigating factors he had considered. PFR File, Tab 1 at 23. He argues that his

misconduct was not serious,[4] he had no prior discipline, and he produced excellent work. *Id.* at 23-24. He also asserts that the offense was not notable and had no public impact upon the agency. *Id.* at 24. The appellant raised these matters before the administrative judge, but they were not discussed in the initial decision.[5] IAF, Tab 23 at 24-25.

¶17    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. The record shows that the deciding official weighed some of the *Douglas* factors, giving specific attention to the seriousness of the misconduct, the type of position the appellant held, the negative effect of the offenses upon his ability to perform the essential functions of his position and his supervisor's loss of confidence in him, his apparent lack of remorse and unwillingness to accept responsibility for his actions, and the inadequacy of alternative sanctions. IAF, Tab 29 at 44; *see Douglas*, 5 M.S.P.R. at 305-06. The deciding official gave greatest weight to the seriousness of the offense and the fact that the appellant's actions caused management to lose trust in his ability to do his job. IAF, Tab 29 at 44-45; IAF, Tab 6 at 28-29. The appellant correctly observes that neither the deciding official

---

[4] The appellant also asserts here that his removal would not promote the efficiency of the service because he acted in response to an emergency. PFR File, Tab 1 at 20. He argues that the room had not been properly secured, and he entered only to shut off a silent alarm, as he had been instructed to do earlier in his employment. *Id.* There was, however, no need for the appellant to enter the room. The record does not show that any threat existed to persons or property as a result of the alarm, and he already had requested the assistance of other persons who would have handled the matter. He had called a supervisor, who was off-post at the time, but explained to the appellant that he would return to the facility. IAF, Tab 25 at 25. The appellant also had notified the Provost Marshall's office about the alarm. *Id.*; IAF, Tab 6 at 77.

[5] *Cf. Yeschick v. Department of Transportation*, 801 F.2d 383, 385 (Fed. Cir. 1986) (finding that the administrative judge need not contemplate mitigating factors not identified by the appellant as significant).

nor the administrative judge discussed *any* mitigating factors, including those that he now reasserts on review. PFR File, Tab 1 at 23-24; ID at 30-32.

¶18    An agency's determination of an appropriate penalty is not entitled to deference when the deciding official did not consider any of the relevant mitigating circumstances. *Bivens v. Tennessee Valley Authority*, 8 M.S.P.R. 458, 461 (1981). After reviewing the mitigating factors, however, the Board still may find that the penalty falls within the tolerable limits of reasonableness for the sustained charges. *See, e.g.*, *Daniels v. U.S. Postal Service*, 57 M.S.P.R. 272, 284-87 (1993). Here, we make such a finding, modifying the initial decision by considering the mitigating factors that the appellant identified. ID at 29-32; PFR File, Tab 1 at 23-24. Although the appellant had a clean disciplinary record and a solid performance history, IAF, Tab 28 at 57-58, we do not agree with his assertion that his offense was nominal or nonexistent. We likewise find that he does not show excellent potential for rehabilitation. PFR File, Tab 1 at 23; IAF, Tab 23 at 25. To the contrary, the agency has shown that the appellant committed serious misconduct by breaching a secure facility where sensitive and dangerous weapons are stored after he had been ordered not to access that facility without an escort. IAF, Tab 29 at 43-45. His conduct raises significant doubts as to his future reliability. *Id.* at 44. His lack of remorse and unwillingness to accept responsibility for his actions militates against his potential for rehabilitation. *Id.* Accordingly, we find that the penalty of removal falls within the tolerable limits of reasonableness for the sustained charges.

The administrative judge did not err when he declined to admit the appellant's compact discs into evidence.

¶19    Finally, the appellant argues that the administrative judge erred by not admitting into evidence two of the compact discs (CDs) he submitted.[6] PFR File,

---

[6] The petition for review includes several attachments. PFR File, Tab 1, Attachments 1-10. The attached documents are already in the record and thus are not new evidence under the Board's definition. *See Meier v. Department of the Interior*, 3 M.S.P.R. 247,

Tab 1 at 14.  These CDs, he asserts, prove that his access to the TACOM FMX small arms room was orally revoked and then orally restored prior to May 16, 2013.  PFR File, Tab 1 at 9-10; IAF, Tab 31 at 4-5.  The agency argued that the CDs should not be admitted because the appellant did not produce them during discovery and he first disclosed their existence in his close of the record brief.  IAF, Tab 31 at 4-5, 9-10.  The agency first received the CDs 6 days after the close of the record.  *Id.* at 10.

¶20      Evidentiary issues fall within the sound discretion of the Board and its officials.  *See Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378-79 (Fed. Cir. 1988) (citing *Spezzaferro v. Federal Aviation Administration*, 807 F.2d 169, 173 (Fed. Cir. 1986); 5 C.F.R. § 1201.41(a), (b)).  Such matters will not be overturned "unless an abuse of discretion is clear and is harmful." *Id.*  The administrative judge explained that he did not admit the CDs because they had not been authenticated and they lacked "even any accompanying description to establish any factual basis for the recording."  ID at 9 n.3.  The administrative judge noted that the appellant also failed to explain why the records had not been produced in discovery.  *Id.*  The appellant argues that authentication was unnecessary.  PFR File, Tab 1 at 16.

¶21      In light of the circumstances, however, we find no abuse of discretion.  The CDs are of limited value.  The agency found the sound quality to be poor, even unintelligible in places, and the appellant did not provide a transcript.  IAF, Tab 31 at 4-6.  Additionally, the appellant averred during discovery that he had produced all verbal conversations.  IAF, Tab 29 at 175.  His last-minute production of the CDs denied the agency the opportunity to proffer rebuttal evidence.  For all of these reasons, we affirm the initial decision as modified.

---

256 (1980) (determining that evidence that is already a part of the record is not new); 5 C.F.R. § 1201.115(d) (to constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United

States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.