**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JASON G. PETERS,<br>　　　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-15-0751-I-1 |
| 　　　v. | |
| DEPARTMENT OF THE INTERIOR,<br>　　　　　　　Agency. | DATE: January 6, 2017 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shaun C. Southworth, Esquire, Atlanta, Georgia, for the appellant.

Kevin D. Mack, Esquire, Sacramento, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1　　The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2  The agency removed the appellant from the GS-11 Senior Law Enforcement Ranger position effective September 22, 2014, based on the charges of lack of candor (four specifications) and conduct unbecoming a law enforcement officer (one specification). Initial Appeal File (IAF), Tab 3, Subtabs 4b-4c, 4h. The specifications of charge 1 came to light as a result of the appellant's statements during the November 2013 investigation of the Chariot Wildland Fire by the agency's Office of Professional Responsibility (OPR). That fire started on July 6, 2013, on Bureau of Land Management-managed lands and then spread to private and National Forest Service lands, burning roughly 7050 acres, destroying 149 structures, and causing about $11 million in damage. IAF, Tab 3, Subtab 4h. The appellant was one of the first individuals to report the fire. Hearing Testimony (HT) (testimony of the deciding official) (Mar. 29, 2016, at 1-20, 41).

¶3  On the day that the fire started, the appellant was operating a law-enforcement vehicle, a Jeep Rubicon, that caught fire and burned at the Butterfield Ranch campground, a location about 2 miles from the point of origin of the fire. *Id*. In the report of his actions after spotting the fire, the appellant stated that "at 12:50" he "entered the area to search for any suspects whom may have started the fire. I drove to an area where a 'Y' intersection is. . . . I took the right route." IAF, Tab 3, Subtab 4i. Subsequently, in the November 2013

interview by OPR, the appellant initially repeated that at the Y he took the right route. However, as the interview progressed, he stated that he had earlier been at the Y and took the left route, which led into the area of the origin of the fire. He stated that he was in that general fire burn area between approximately 12:00 p.m. and 12:28 p.m. *Id.* The appellant also admitted that he did not report to the CalFire investigator during her investigation that began 2 days after the fire, nor his supervisor that he had been in the general fire burn area minutes before he reported the fire. *Id.* The appellant further admitted that he did not come forward with this information after fire investigators determined that the fire probably was vehicle ignited.[2] *Id.* The OPR report indicated that the appellant's log entries for the date that the fire started indicate that he was patrolling another area, the Sawtooth Wilderness Area, from 12:00 p.m. to 12:28 p.m., the time that he admitted he was in the general fire burn area. *Id.*

¶4        Based on the appellant's admissions during the OPR investigation, the agency specified that the appellant lacked candor: (1) when he did not inform his supervisor that he had driven in the fire burn area prior to the initiation of the fire; (2) when he did not inform the CalFire investigator that he had driven in the fire burn area prior to the initiation of the fire; (3) when he did not state in his official report about the fire that he had been in the fire burn area prior to the initiation of the fire; and (4) when he omitted from his daily patrol log that he had driven in the fire burn area prior to the initiation of the fire. The agency specified that his failure to provide the CalFire investigator with useful guidance or assistance in directing the focus of the initial fire investigation constituted failure

---

[2] The appellant maintained during the OPR investigation that the Jeep he was driving did not start the fire. However, in the civil actions brought to recover losses caused by the fire, the appellant was named as a co-defendant and accused of starting the fire. IAF, Tab 3, Subtab 4i. The agency presented no evidence to show that the appellant intentionally or negligently caused the fire or violated any laws, rules, or regulations during his patrol on July 6, 2013, the date that the fire started.

to cooperate fully, hindering the fire investigation, and was conduct unbecoming a Federal law enforcement officer. IAF, Tab 3, Subtab 4h.

¶5 The appellant appealed the agency's action, denying the misconduct, claiming that for a time after his Jeep burned, he suffered post-traumatic stress disorder (PTSD) that caused him not to remember that he had driven into the fire burn area. He also alleged that the agency failed to provide minimum due process because the deciding official engaged in ex parte communications with the CalFire investigator that the deciding official relied on in reaching the decision to remove the appellant. Additionally, he claimed that the agency's action was discrimination on the basis of disability, PTSD.[3]

¶6 The administrative judge found not credible the appellant's claim that he did not remember that he had been in the general fire area immediately prior to the ignition of the Chariot Wildland Fire on July 6, 2013. IAF, Tab 35, Initial Decision (ID) at 28. He thus found that the agency proved that the appellant knowingly did not tell his supervisor and the CalFire investigator that he was in the fire burn area immediately preceding the Chariot Wildland Fire igniting on July 6, 2013. ID at 28-31. The administrative judge also found that the agency proved that the appellant knowingly initially did not tell OPR investigators that he was in the Chariot Wildland Fire burn area immediately preceding the July 6, 2013 fire, and that he knowingly failed to state in his official report of the Chariot Wildland Fire that he had been in the fire burn area immediately preceding the fire ignition. ID at 31-32. Additionally, he found that the appellant knowingly omitted that he had been in the fire burn area immediately preceding ignition from his July 6, 2013 daily log. ID at 32-33. Thus, the administrative judge

---

[3] In his initial submissions, the appellant also alleged as affirmative defenses that the agency's action constituted discrimination on the basis of sex, including sex stereotyping, reprisal for engaging in protected equal employment opportunity activity, and reprisal for whistleblowing. IAF, Tab 1. However, at the conclusion of the hearing, the appellant withdrew these affirmative defenses. HT (testimony of the appellant (March 30, 2016, at 408).

sustained charge 1. Further, the administrative judge found that the agency proved that the appellant failed to provide useful guidance to the CalFire investigator, and that by not providing useful assistance, the appellant engaged in conduct unbecoming that reflected poor judgment on his part and detracted from his reputation. ID at 33-35. Thus, he found that the agency also proved charge 2.

¶7　　　As to the appellant's affirmative defenses, the administrative judge found that the deciding official's communication with the CalFire investigator was only to ask her what type of report she had wanted about the fire from the appellant, i.e., whether there was a particular format for the report. The administrative judge found that this communication was cumulative and did not result in any pressure on the deciding official to rule in a particular manner. ID at 36-37. Thus, he found that the appellant failed to establish a due process violation. The administrative judge also found that the appellant established that he is an individual with a disability, PTSD. ID at 39. However, he found that the appellant failed to show that he was a qualified individual with a disability in July 2013 because his PTSD was not diagnosed until February 26, 2014, and the appellant presented no medical evidence that he was symptomatic in July 2013. ID at 40. The administrative judge, therefore, found that the appellant failed to show that PTSD caused him to provide incomplete information about his whereabouts prior to the ignition of the Chariot Wildland Fire on July 6, 2013. ID at 41-43.

¶8　　　Finally, the administrative judge found that the agency established that discipline for the proven misconduct promoted the efficiency of the service, and that the removal penalty was within the bounds of reasonableness. ID at 43-47.

¶9　　　In his petition for review, the appellant generally disagrees with the findings in the initial decision. He asserts that the agency failed to prove that his statements involved an element of deception. Petition for Review (PFR) File, Tab 1. He contends that, if he provided inaccurate information, he did so because he suffered from PTSD, and the administrative judge erred in finding that the

agency proved lack of candor and conduct unbecoming. He also contends that the administrative judge erred in finding that the deciding official's ex parte communication with the CalFire investigator did not deprive the appellant of due process. Additionally, he argues that the agency removed him for his lack of memory of the events of July 6, 2013, and thus removed him because of his PTSD, constituting discrimination on the basis of disability.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge properly found that the agency proved its charges.

¶10 Lack of candor "is a broader and more flexible concept" than falsification. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). However, although lack of candor does not require an "affirmative misrepresentation," it "necessarily involves an element of deception." *Id.* at 1284-85. An agency alleging lack of candor must prove the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that he did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016).

¶11 As the administrative judge found, it is undisputed that the appellant did not inform his supervisor and the CalFire investigator that he had driven in the fire burn area prior to the initiation of the fire, and that he did not state in his official report about the fire or in his daily log that he had driven in the fire burn area prior to the initiation of the fire. Thus, the agency proved prong (1) of the test to establish lack of candor for each specification of the lack of condor charge.

¶12 The administrative judge relied on the testimony of the witnesses who assisted in the investigations of the Chariot Wildland Fire from various perspectives, including to determine whether the Jeep fire was related to the wild fire, as well as his observation of the appellant's demeanor to find that the appellant was not credible when he testified that he omitted mentioning that he had been in the fire burn area from his statements to his supervisor, the CalFire

investigator, and from his reports because of lack of memory. ID at 14-28. In support of his finding that the appellant was not credible, the administrative judge noted that the appellant's firm recall of many other events on the day of the fire, that credible witnesses established that the appellant made a number of inconsistent statements as the various aspects of the investigation progressed, and that the appellant appeared nervous and uncomfortable while testifying. ID at 28-29. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, we defer to the administrative judge's finding that the appellant was not credible when he testified that memory lapse caused him to fail to report that he had been in the fire burn area on July 6, 2013. Thus, we agree with the administrative judge that the agency established that the appellant omitted this critical information knowingly, and that the agency established prong (2) of the test to show lack of candor for each specification of the lack of candor charge.

¶13        A generic charge such as conduct unbecoming does not require specific elements of proof. It is established by proving that the employee committed the acts alleged in support of the broad label. *See Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Here, we agree with the administrative judge that the appellant's 14 years of law enforcement experience taught him that he was to cooperate in the fire investigation, and he volunteered to assist the CalFire investigator with her investigation. ID at 33. Nonetheless, the record shows that the appellant failed to tell the investigator the location of the columns of smoke that he observed on the day of the fire, and she testified that this hindered her efforts to narrow the possible area to look for the source of the fire. ID at 34. We agree with the administrative judge that the appellant's failure to provide effective assistance to a fellow law enforcement officer when

he was able to do so constituted conduct unbecoming that reflected poor judgment on his part and detracted from his reputation.  ID at 34-35.

The administrative judge properly found that the appellant was not denied due process.

¶14    Pursuant to the U.S. Court of Appeals for the Federal Circuit's decisions in *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279–80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed.  The Board has held that an employee's due process right to notice extends to ex parte information provided to a deciding official, if the information was considered in reaching the decision and not previously disclosed to the appellant.  *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 7 (2012).  *Ward*, *Stone*, and their progeny recognize, however, that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm.  *Id*., ¶ 8.

¶15    In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material:  (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner.  *Stone*, 179 F.3d at 1377.  Ultimately, the Board must determine whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances.

¶16    Here, the deciding official testified that he got in touch with CalFire to inquire what sort of report they had requested from the appellant.  HT (testimony of the deciding official) (March 29, 2016, at 92).  He did not speak with the

investigator assigned to investigate the fire. *Id.* Rather, he spoke with another individual at CalFire to try to understand if there was a standard reporting format requested of a party reporting a fire. *Id.* The deciding official was aware that the agency had provided CalFire with the official report of the fire prepared for the agency by the appellant. *Id.* The deciding official testified that this information did not help him with his decision. *Id.* at 93. All he learned from CalFire was that there was not a standard reporting format. *Id.* at 95.

¶17    We agree with the administrative judge that the information that the deciding official received from CalFire was merely cumulative. *Stone*, 179 F.3d at 1377. The deciding official did not get the information from the investigator assigned to the Chariot Wildland Fire. Thus, there was no risk that the conversation would result in comments to the deciding official about the appellant's involvement in her investigation. Further, the deciding official was not asking about the content of the appellant's witness statement to the investigator, only its format, and he learned that there was no standard format. He knew that the appellant had made a statement to CalFire, and he just did not know the format of the statement. In any event, the deciding official had the appellant's official report of the Chariot Wildland Fire as did CalFire. We find no reason to doubt the deciding official's testimony that he did not rely on his contact with CalFire during the decision-making process, and the contact did not provide a basis for his decision on the merits of a proposed charge or the penalty to be imposed.

The administrative judge properly found that the appellant failed to prove that the agency discriminated against him on the basis of disability.

¶18    As a Federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board

applies them to determine whether there has been a Rehabilitation Act violation. *Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 36 n.3 (2007); 29 C.F.R. § 1614.203(b). Those regulations are found at 29 C.F.R. part 1630.

¶19       To prove disability discrimination, the appellant first must establish that he is an individual with a disability as that term is defined in the ADAAA and the EEOC regulations. *See, e.g.*, *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012). The appellant may prove that he has a disability by showing that: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). An impairment is considered to be a disability if it substantially limits an individual's ability to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, eating, lifting, bending, concentrating, communicating, and working; major life activities also include the operation of major bodily functions. 42 U.S.C. § 12102(2). The term "substantially limits" is construed broadly in favor of expansive coverage, to the maximum extent permitted under the ADA, and is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i).

¶20       As the administrative judge found, the appellant proved that he was diagnosed with PTSD on February 26, 2014. The administrative judge properly found that the appellant established that he was a person with a disability that limited his ability to perform major life activities, including sleeping and working.

¶21       The administrative judge carefully addressed the appellant's assertion that, because the agency removed him for his failure to provide complete information about the events on the day that the Chariot Wildland Fire ignited, and the appellant's failure was a result of a lack of memory caused by his PTSD, the agency removed the appellant because of his disability. ID at 41-42. He found

that the detail the appellant provided in his official report concerning his activities on the date that the Chariot Wildland Fire ignited indicates that he had excellent recall of the events of that day. ID at 41. He found that the appellant failed to explain why he could not recall that he drove up the left fork of the Y intersection, a presumably nontraumatic event, when he could recall in detail what he described as the traumatic event of his Jeep catching fire. ID at 41. Additionally, the administrative judge found that the appellant did not claim lack of recall during his OPR interview as the reason that he did not previously tell anyone that he had driven down the left fork at the Y intersection; rather, he told the interviewers after he admitted that he drove down the left fork that did not deem that information relevant. ID at 41.

¶22 Further, the administrative judge addressed the appellant's assertion that the OPR investigators pressured him to not raise lack of memory as an issue. He found that the OPR investigators were aware that the appellant was stressed by reliving the experience of the Jeep fire and the fear that the Jeep might explode, and they discussed the Employee Assistance Program with the appellant. ID at 42. Thus, the administrative judge found that the appellant could raise stress during his OPR interview, and if lack of memory was the real reason for his omitting the fact that he drove the left fork of the Y intersection on the day of the fire, he could have disclosed that during the OPR interview, rather than giving other reasons for his omission. ID at 42. In any event, we note, as stated above, that the administrative judge found incredible the appellant's assertion that he had no memory that he drove the left fork of the Y intersection, and that that finding is entitled to deference. *Haebe*, 288 F.3d at 1301. We agree with the administrative judge that the appellant failed to prove that the agency discriminated against him on the basis of disability.

¶23 Finally, although the appellant does not argue that the penalty is unreasonable in his petition for review, we agree with the administrative judge that the removal penalty is within the bounds of reasonableness for the sustained

misconduct. The appellant's lack of candor is a serious offense that strikes at the heart of the employer-employee relationship. *See Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶¶ 28, 29 (2000), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002). Because the appellant was a law enforcement officer, and it is well settled that law enforcement officers may be held to a higher standard of conduct than other Federal employees, the agency was entitled to hold him to a higher standard of conduct. *Hartigan v. Veterans Administration*, 39 M.S.P.R. 613, 619 (1989); *see Dunn v. Department of the Air Force*, 96 M.S.P.R. 166, ¶¶ 2, 12-18 (2004) (finding that removal was a reasonable penalty when the employee engaged in conduct unbecoming and exhibited a lack of candor), *aff'd*, 139 F. App'x 280 (Fed. Cir. 2005).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.