NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ELIZABETH AVILES-WYNKOOP,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2019-1908

---

Petition for review of the Merit Systems Protection Board in No. DC-315H-16-0327-B-1.

---

Decided: September 2, 2020

---

ELIZABETH AVILES-WYNKOOP, Washington, DC, pro se.

DELISA SANCHEZ, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ETHAN P. DAVIS, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge*, LINN and TARANTO, *Circuit Judges*.

PER CURIAM.

Elizabeth Aviles-Wynkoop began working as a program analyst at the United States Department of Defense (DoD) in June 2015. Two months later, DoD placed her on administrative leave. In October 2015, DoD proposed to terminate Ms. Aviles-Wynkoop's employment, and after receiving her response, DoD terminated her employment in January 2016. Ms. Aviles-Wynkoop appealed to the Merit Systems Protection Board, which affirmed DoD's termination decision on the merits. We affirm.

I

Before she began working at the DoD job at issue in this matter, Ms. Aviles-Wynkoop served in other positions in the federal government. She started with a temporary appointment to a clerk typist position in September 1982, which soon became a career conditional appointment. She left that position in April 1990, but she returned to the federal government to work as a contract specialist from April 2003 to January 2009 and then worked as a contract oversight specialist from August 2011 to September 2014. Ms. Aviles-Wynkoop joined DoD as a program analyst on June 29, 2015.

On August 13, 2015, Ms. Aviles-Wynkoop met with Carol Ensley, Chief of Acquisition Management in Ms. Aviles-Wynkoop's department. Ms. Ensley informed Ms. Aviles-Wynkoop that several employees had expressed concerns about Ms. Aviles-Wynkoop's behavior, which they characterized as "inappropriate, overly aggressive, and unprofessional." S.A. 63. Ms. Aviles-Wynkoop rejected the characterization and, later that day, emailed Ms. Ensley and Mr. Russell to address the behavior in question. S.A. 141. In that response, she stated that her behavior was justified by a contractor's misconduct and several co-workers' subpar work habits. S.A. 141–42. Two weeks later, Ms. Aviles-Wynkoop missed a staff meeting, prompting an

email from Ms. Ensley asking Ms. Aviles-Wynkoop to provide notice of such absences in the future. S.A. 136. Ms. Aviles-Wynkoop replied that she did not believe that she had to report to Ms. Ensley. *Id.*

On August 28, 2015, Ms. Ensley placed Ms. Aviles-Wynkoop on paid administrative leave. S.A. 58. Ms. Ensley stated that the action did "not constitute a disciplinary or adverse action" and that Ms. Aviles-Wynkoop was "expected to remain available by telephone during [her] normal duty hours." *Id.*

In a letter dated October 27, 2015, Ms. Ensley proposed that Ms. Aviles-Wynkoop be terminated from her position. S.A. 60. The letter began with a statement that Ms. Aviles-Wynkoop had not yet served a full "probationary period" and was thus a "true probationer with limited pre-termination procedural rights and post-termination appeal rights." *Id.* The rest of the letter laid out the reasons for the proposal—Ms. Aviles-Wynkoop had refused to recognize Ms. Ensley as a supervisor; had "demonstrated a pattern of discourteous behavior towards contractors, fellow employees and management"; had refused to modify her behavior after being reprimanded; and had sent inappropriate emails to senior staff. S.A. 62–64. The letter concluded that Ms. Aviles-Wynkoop had ten days to submit an oral or written response, could "submit affidavits and other documentary evidence," and could seek the assistance of "an attorney or other representative." S.A. 65.

Because Ms. Aviles-Wynkoop did not receive the letter until November 6, 2015, she had until November 16, 2015, to submit a reply. She requested two extensions of the due date, and DoD and Ms. Aviles-Wynkoop agreed that she would present an oral reply on December 14, 2015, at the Pentagon. On December 11, 2015, Ms. Aviles-Wynkoop requested a third extension, which DoD denied. She and DoD agreed on a time on December 14 for her personal

appearance at the Pentagon, but she did not appear at that time, notifying DoD an hour later that she had experienced car troubles.  She did, however, submit a written response.

On January 4, 2016, DoD terminated Ms. Aviles-Wynkoop's employment.  In a written decision, Jerry Russell, Deputy Chief of the Business Resource Center, noted that Ms. Aviles-Wynkoop had not "dispute[d] the fact that any of the charged misconduct occurred"—she "merely provided the reasons [she] engaged in the misconduct."  S.A. 69.  Finding that those explanations did not "negate" the conduct, Mr. Russell evaluated the proposed penalty of termination.  He stated that Ms. Aviles-Wynkoop was a "true probationer," S.A. 68, and on that premise found removal appropriate because Ms. Aviles-Wynkoop had not "demonstrated the ability to perform the essential functions of [her] position" and termination was necessary to "promote the efficiency of the service," S.A. 70.  Mr. Russell went on, however, to decide that termination was the appropriate penalty, considering "all relevant *Douglas* factors," even on the assumption that Ms. Aviles-Wynkoop was a full employee.  *Id.*  Although Mr. Russell noted that the absence of a disciplinary record and her lengthy previous service were mitigating factors, he concluded that those factors were outweighed by several aggravating factors—her inflammatory behavior, the nature of her position, her direct insubordination, and her refusal to apologize—and the fact that a DoD manual recommended removal.  S.A. 70–71.

On February 3, 2016, Ms. Aviles-Wynkoop appealed her termination to the Board.  In late March, the administrative judge assigned to the matter dismissed the appeal for lack of jurisdiction, determining that Ms. Aviles-Wynkoop had only probationary status.  But the full Board vacated that decision, explaining that there was a genuine issue of material fact as to whether Ms. Aviles-Wynkoop's previous federal service qualified her to skip the probationary period.  In January 2017, the administrative judge

found Ms. Aviles-Wynkoop to qualify as a full employee, thus giving the Board jurisdiction. Ms. Aviles-Wynkoop agreed to waive her right to an evidentiary hearing with witnesses testifying live, and the administrative judge set a March deadline for the submission of evidence. DoD submitted affidavits from Ms. Ensley, Mr. Russell, and others.[1]

On May 24, 2017, the administrative judge issued an initial decision, which affirmed DoD's decision to terminate Ms. Aviles-Wynkoop. The administrative judge first explained that there was a sufficient connection between Ms. Aviles-Wynkoop's "unprofessional behavior in the office" and her "ability to accomplish her duties satisfactorily." S.A. 9. Turning to the reasonableness of the penalty, the administrative judge noted that a "failure to follow instructions may be sufficient cause for removal." S.A. 10. Ms. Aviles-Wynkoop, he wrote, had committed several acts of misconduct and "each act of unprofessional conduct constituted intentional conduct of a serious nature." *Id.* Moreover, Ms. Aviles-Wynkoop had failed to correct her behavior despite a clear warning from her supervisor. *Id.* Accordingly, the administrative judge concluded, "the removal penalty comes within the bounds of reasonableness." *Id.* The administrative judge also rejected Ms. Aviles-

---

[1]    Ms. Aviles-Wynkoop suggests that it was improper for the Board to rely on those affidavits because they presented evidence that was not included in the notice of proposed termination. Petitioner's Supp. Br. at 12–13. The affidavits, however, were submitted before the evidentiary deadline establish by the administrative judge. And Ms. Aviles-Wynkoop has not identified any requirement that an agency attach to a notice of proposed termination all evidence of the misconduct described in the notice.

Wynkoop's claims that she had been denied due process and removed in retaliation for whistleblowing. S.A. 14–17.

Ms. Aviles-Wynkoop initially sought review by the full Board. Before receiving a final decision from the full Board, she filed a petition in this court as well. Because the Board had not rendered a final decision, we ordered her to show cause why the petition filed in this court should not be dismissed as premature. She then withdrew her request for review by the full Board, thereby making the administrative judge's initial decision the final decision of the Board, which we have jurisdiction to review under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's determinations unless they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Ms. Aviles-Wynkoop argues that the Board committed reversible error in reviewing three challenges—that DoD did not properly assess the factors relevant to imposing the penalty of removal, deprived her of due process, and retaliated against her for two protected whistleblowing disclosures. We reject Ms. Aviles-Wynkoop's arguments.

## A

To sustain an adverse employment action based on improper conduct, an agency must establish not only that the charged conduct occurred and was sufficiently connected to the efficiency of the government service, but also that the penalty imposed was reasonable. *Bryant v. Nat'l Sci. Found.*, 105 F.3d 1414, 1416 (Fed. Cir. 1997). Of those elements, Ms. Aviles-Wynkoop focuses here only on the reasonableness of the penalty. The Board's review of an

agency-imposed penalty "is highly deferential," and "[i]t is well-established that selecting the penalty for employee misconduct is left to the agency's discretion." *Webster v. Dep't of Army*, 911 F.2d 679, 685 (Fed. Cir. 1990).

Ms. Aviles-Wynkoop argues that DoD failed to consider factors that are relevant to a penalty's reasonableness under *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 302, 305 (1981). But she does not show that DoD disregarded or misevaluated pertinent *Douglas* factors. More particularly, she does not show that the Board abused its discretion in determining that DoD reasonably considered the *Douglas* factors. S.A. 9–11.

The Board concluded that Mr. Russell, the deciding official, "appropriately determined that the appellant's removal was warranted under the facts and circumstances of this case." S.A. 10. Mr. Russell described Ms. Aviles-Wynkoop's behavior and listed several factors he considered to be aggravating: the nature of her job, which required her to "evaluate contractor employee performance, review programs, collaborate with customers in developing budgets and spend plans, and conduct presentations and briefings"; her refusal to recognize her supervisor; her continued misconduct after the August 13, 2015 warning; and her lack of remorse. S.A. 71. Each of those factors corresponds, respectively, to a *Douglas* factor—"the employee's job level and type of employment, including supervisory or fiduciary role"; "the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties"; "the clarity with which the employee was on notice of any rules that were violated"; and the "potential for the employee's rehabilitation." 5 M.S.P.R. at 305. Mr. Russell also consulted DoD's manual for "Disciplinary and Adverse Actions" and found that, even for a first-time offense, termination was a recommended penalty for insubordination. S.A. 71. This analysis matches another of the

*Douglas* factors—"consistency of the penalty with any applicable agency table of penalties." 5 M.S.P.R. at 305. And Mr. Russell expressly noted his consideration of Ms. Aviles-Wynkoop's length of service and lack of disciplinary record as mitigating factors. S.A. 71.

We see no reversible error in the Board's conclusion that DoD adequately considered the relevant penalty factors.

## B

The for-cause removal protections of 5 U.S.C. § 7513(a) entitle federal employees to procedural due process rights. *Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir. 1999). "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). And in the specific context of a tenured public employee whose termination has been proposed, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* We have endorsed this standard in the agency context, highlighting the "need for a meaningful opportunity for the public employee to present his or her side of the case." *Stone*, 179 F.3d at 1376.

Ms. Aviles-Wynkoop's informal brief in this court asserts that DoD committed a "gross abuse of due process." Petitioner's Br. at 1 (response to question 2). Before the Board, Ms. Aviles-Wynkoop specified two alleged due-process violations. First, she said, DoD incorrectly informed her that she was serving a probationary period. "A notice of proposed removal that mischaracterizes the proceedings as a probationary removal," she argued, "cannot be said to have provided an employee a 'meaningful opportunity to respond.'" Petition at 3–4. Second, she said, Mr. Russell relied, in his termination decision, on certain grounds "not specified in the proposal notice." *Id.* at 4.

As to the first, Ms. Aviles-Wynkoop has not shown that DoD's initial mistake about her probationary or full-employee status deprived her of the guaranteed right to respond to the proposed termination. Section 7513(b)(2) provides that an employee faced with a proposed termination "is entitled to . . . a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer." Ms. Aviles-Wynkoop had more than a month to craft an answer—she received the proposal on November 6, 2015, and was allowed until December 14, 2015, to respond. S.A. 67. The letter of proposed termination expressly invited her to submit affidavits and documentary evidence. S.A. 65. Although "§ 7513 . . . do[es] not provide the final limit on the procedures the agency must follow," *Stone*, 179 F.3d at 1375, Ms. Aviles-Wynkoop has not stated with particularity what required process she was denied. We therefore reject her first procedural challenge.

We also reject Ms. Aviles-Wynkoop's second procedural challenge specified in her petition to the Board—that Mr. Russell "relied on several aggravating factors and characterizations not specified in the proposal notice." Petition at 4. Specifically, Ms. Aviles-Wynkoop pointed to Mr. Russell's findings that her alleged misconduct caused a "hostile environment," that several employees submitted formal complaints to her supervisor, that she did not apologize for her behavior, that she was "progressively counseled" by a supervisor, and that her misconduct was both "impertinent" and "intimidating." *Id.* But Ms. Aviles-Wynkoop has not shown that DoD failed to provide adequate "notice of the charges against" her in these respects. *Loudermill*, 470 U.S. at 546.

In the letter proposing termination, DoD stated that Ms. Aviles-Wynkoop had previously been reprimanded for "inappropriate, overly aggressive, and unprofessional conduct" and had "explicitly exhibit[ed] . . . disdain and utter

disrespect for contractors." S.A. 63. The Board properly determined that these statements put Ms. Aviles-Wynkoop on notice that she was being accused of creating a "hostile environment" and of acting in a manner that was "impertinent" and "intimidating." Similarly, in the letter, DoD highlighted the August 13 meeting in which Ms. Ensley "gave [Ms. Aviles-Wynkoop] documentation regarding specific observations and concerns pertaining to [the conduct]." *Id.* This statement, and the meeting itself, was enough to put Ms. Aviles-Wynkoop on notice that her co-workers had filed complaints about her behavior. DoD further stated in the letter of proposed termination that Ms. Ensley had on multiple occasions—once by email and once in person—advised Ms. Aviles-Wynkoop to modify her behavior. S.A. 62–63. The reference to Ms. Ensley's communications provided sufficient notice of what Mr. Russell later used the words "progressively counseled" to describe. Finally, DoD stated in its letter that when Ms. Aviles-Wynkoop was confronted about her behavior, she "attempted unsuccessfully to justify [her] professional conduct." S.A. 63. This statement sufficiently gave notice of DoD's belief in Ms. Aviles-Wynkoop's lack of remorse.

C

Under 5 U.S.C. § 2302(b)(8)(A), an agency may not take "a personnel action" against an employee who makes a protected disclosure, *i.e.*, "any disclosure of information" that the employee "reasonably believes evidences . . . any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." If an employee establishes the existence of a protected disclosure, and further establishes that the protected disclosure was a "contributing factor" to the agency's decision to take the personnel action, the agency may defeat the whistleblowing defense to the adverse action by demonstrating that it would have taken the action

regardless of the protected disclosure. *See Carr v. Soc. Security Admin.*, 185 F.3d 1318, 1322 (Fed. Cir. 1999); 5 U.S.C. § 1221(e).

Ms. Aviles-Wynkoop argued to the Board that she had made two protected disclosures before the agency's termination decision. The first was in her August 13, 2015, email exchange with Ms. Ensley and Mr. Russell. Petition at 2 (referring to S.A. 141–42). In that exchange, she alleged, she "disclose[d] [her] belief that the contractors who were working in her office had access to privileged information in violation of agency rules" and that "contractors w[]ere still providing maintenance services to the cyber security office even though the maintenance agreement had expired." *Id.* The second protected disclosure, she contended, was in a phone call to a DoD Inspector General hotline, in which she stated that a certain contractor had failed to do its job properly. *Id.*

Substantial evidence supports the Board's finding that—even if, as we may assume without deciding, the specified disclosures qualified as "protected" and contributed to DoD's termination decision—DoD would have made the same decision to terminate in the absence of those disclosures. In *Carr*, we stated that the following factors are relevant to this inquiry: "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." 185 F.3d at 1323. Here, the Board determined that DoD proved its firm belief that Ms. Aviles-Wynkoop created a "toxic" work environment; the hotline complaint was made months after Ms. Aviles-Wynkoop had already been placed on administrative leave; and most of the relevant misconduct took place before the August 13 email exchange. S.A. 17. On this record, we cannot say

that the Board committed reversible error in finding that DoD would have taken the same termination action had the alleged disclosure never been made.

## III

Ms. Aviles-Wynkoop has a filed a motion in this court asking us to direct DoD to produce to her all of her work-related emails from June 29, 2015, to January 4, 2016. We deny the motion. The appropriate time for seeking discovery was when the matter was before the Board, whose rules provide for discovery and give the administrative judge wide discretion regarding discovery. *See* 5 C.F.R. §§ 1201.41, 1201.73; *Curtin v. Off. of Pers. Mgt.*, 846 F.2d 1373, 1378–79 (Fed. Cir. 1988). Ms. Aviles-Wynkoop has not identified any Board error regarding discovery in this case or provided any other basis for us, as an appellate court, to act regarding further document discovery at this stage.

## IV

For the foregoing reasons, the decision of the Board is affirmed.

The parties shall bear their own costs.

**AFFIRMED**