## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| TRAVIS JACKSON, | DOCKET NUMBER |
| Appellant, | PH-0752-22-0084-I-2 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: August 19, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Adam K. Hobaugh, Esquire, Wexford, Pennsylvania, for the appellant.

Allen Brooks, Esquire, and Candice Bang, Esquire, Quantico, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1 The agency has filed a petition for review of the initial decision, which reversed the appellant's removal for a due process violation. For the reasons discussed below, we GRANT the agency's petition for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        At the time relevant to this appeal, the appellant held the position of Program Analyst for the Department of Defense, Defense Counterintelligence and Security Agency.  *Jackson v. Department of Defense*, MSPB Docket No. PH-0752-22-0084-I-1, Initial Appeal File, Tab 7 at 320.  In March 2019, the agency suspended him for several charges that included a failure to work reported hours.  *Id*. at 342.  Then, in May 2020, the agency proposed his removal for a single charge of failure to work reported hours, with 73 underlying specifications.  *Id*. at 320-340.  Broadly speaking, the agency alleged that there were 73 days between March and September 2019 where the appellant did not work his entire 8-hour shift, amounting to a total of approximately 50 hours claimed but unworked.  *Id*. at 336.

¶3        The appellant submitted oral and written responses.  *Id*. at 24-319.  Subsequently, the deciding official sustained the charge and removal based on 71 of the 73 underlying specifications.  *Id*. at 16-23.

¶4        The appellant filed the instant appeal to challenge his removal.  IAF, Tab 1.  The administrative judge developed the record and held the requested hearing.  *Jackson v. Department of Defense*, MSPB Docket No. PH-0752-22-0084-I-2, Refiled Appeal File (AF-2), Tab 27, Hearing Transcript, Day 1, Tab 29, Hearing Transcript, Day 2 (HT2).  He then issued an initial decision, reversing the appellant's removal on due process grounds.  AF-2, Tab 35, Initial Decision (ID).  The administrative judge concluded that the deciding official violated the appellant's right to due process by determining that the appellant's misconduct was intentional without prior notice that he would do so.  ID at 2-6.

¶5      The agency filed a petition for review. *Jackson v. Department of Defense*, MSPB Docket No. PH-0752-22-0084-I-2, Petition for Review (PFR) File, Tab 1.[2] The appellant filed a response, and the agency replied. PFR File, Tabs 3-4.

¶6      The fundamental rights of due process require that a tenured public employee receive oral or written notice of the charges against him, an explanation of the agency's evidence, and an opportunity to respond, either in person or in writing. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39, 546-48 (1985). An agency's failure to provide these rights deprives a tenured employee of his property right in his employment. *Id*. at 546.

¶7      Under *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation,* 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 34. *Ward, Stone*, and their progeny recognize, however, that not all ex parte communications rise to the level of a due process violation. *Id*.

¶8      In *Stone*, the U.S. Court of Appeals for the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material: (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was "of the type likely to result in undue pressure on the deciding official to rule in a particular manner." *Stone*, 179 F.3d at 1377. Ultimately, we must determine "whether the ex parte communication is so substantial and so likely to cause prejudice that no

---

[2] Although the initial decision did not include language ordering the agency to do so, the agency's petition for review includes certification that it provided the appellant with interim relief. *Compare* ID at 7-15, *with* PFR File, Tab 1 at 26-29; *see Stewart v. Department of Transportation*, 2023 MSPB 18, ¶¶ 7-14 (discussing an agency's statutory obligation to provide interim relief, even if an administrative judge mistakenly omits interim relief orders in an initial decision).

employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id*.

¶9 The administrative judge identified the potential *Ward*/*Stone* due process issue in this case as one stemming from the deciding official's testimony that she considered the appellant's conduct intentional for purposes of her penalty analysis, despite the proposal to remove the appellant including no such allegation. ID at 2-3. The administrative judge found that the deciding official's determination about the appellant's intent was "new and material," and that it "was so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." ID at 4-6 (quoting *Stone*, 179 F.3d at 1377). Notably, though, the administrative judge's due process analysis relies on the proposal letter, in isolation. It contains no discussion of whether the appellant's intent was raised in materials attached to the proposal or the appellant's response to the proposal. ID at 2-6. *See Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶ 15 (2004) (holding that due process is satisfied when the proposal notice and any attachments to it, taken together, provide the employee with specific notice of the charges against him so that he can make an informed and meaningful reply).

¶10 On review, the agency argues that the appellant was not denied due process. PFR File, Tab 1 at 9-23. We agree. The case at hand is similar to other cases where the Board found no due process violation.

¶11 The agency's charge and underlying specifications did not allege that the appellant's misconduct was intentional—it was altogether silent about whether the misconduct was intentional or inadvertent. IAF, Tab 7 at 320-35. However, the proposal letter did include some references to the appellant's state of mind at the time of the charged misconduct. For example, the proposal described how the appellant had admitted that he would oftentimes cut his workday short if he was outside on a break and did not want to walk back to the office, and how the appellant rationalized that this was offset by his answering of emails when he was

off the clock. *Id*. at 336. The proposal further described how, when confronted by investigators from the Office of Inspector General (OIG) about shortcomings in his time and attendance, the appellant stated that he was surprised and thought he was doing a better job of tracking his time. *Id*. at 337-38.

¶12    The OIG report of investigation underlying the proposed removal contains additional references to the appellant's intent.[3] According to that report, the appellant "stated he has never intentionally submitted an inaccurate time report," and "stated he has never intentionally submitted a time report without reflecting approved leave due to low leave balance or for any other reason." *Id*. at 394. He also "stated he was not intentionally shorting his hours each day and felt he was working all of his reported hours." *Id*. at 396-97. Attached to the investigatory report is the appellant's own handwritten affidavit that states, "[f]irst and foremost there was no intention of defrauding or theft of time." *Id*. at 496.

¶13    Moreover, in response to the proposed removal, the appellant addressed his state of mind again. Among other things, he indicated that he "never intentionally attempted to cheat [his] hours or time working." *Id*. at 318. The appellant added that he was "not attempting in any way to avoid responsibility if [he had] unintentionally miscalculated his time," and that he has "not ever intentionally attempted to get paid for work that [he] did not perform." *Id*. In another instance, his response included the assertion that he was "never trying to cheat the agency out of time or money." *Id*. at 121. From this evidence, it is plain that the appellant knew of the ex parte information at issue here, that is, the question of whether his charged conduct was intentional, and had an opportunity to respond, as, indeed, he actually did respond to it. *Stone*, 179 F.3d at 1377.

---

[3] The proposal to remove the appellant repeatedly referenced the OIG report of investigation and it ends with a notation that materials relied on for the proposal were attached. IAF, Tab 7 at 341. Plus, we found no suggestion that the appellant was deprived of the OIG report during the response period. To the contrary, the appellant's response to his proposed removal repeatedly references the "ROI," which appears to be the appellant's shorthand for the OIG report of investigation. *E.g., id*. at 33, 317. Thus, we find it more likely than not that the OIG report was given to the appellant alongside his proposed removal.

¶14    During the hearing, the deciding official testified about the *Douglas* factors that illuminated her decision about the appropriate penalty. HT2 at 164 (testimony of the deciding official); *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that may be relevant for consideration in determining the appropriateness of a penalty). In reference to the first *Douglas* factor, i.e., the nature and seriousness of the offense, including whether the offense was intentional or inadvertent, the deciding official stated that "this was a strong factor for the basis of determining, you know, what was the offense, and examining that, as well as any intention behind that offense, which would determine any possibility of rehabilitation." HT2 at 164 (testimony of the deciding official). During cross examination, the deciding official was asked about this factor again. She testified, "so the intention of this—it was a repeated offense, you know, inadvertent would have been once, twice. You know, this was over a period of time repeated behavior of not working the times that were reported." *Id*. at 185-86. The appellant's representative asked what that meant to the deciding official, who responded as follows: "this was now a more intentional of working whatever schedule [the appellant] determined was appropriate for that day." *Id*. at 186. Later, the deciding official responded, "yes," when asked if she "believed that the actions of [the appellant] were intentional and that's what—that's what [the first *Douglas* factor] reflects." *Id*. at 200.

¶15    As detailed above, the proposal to remove the appellant did not charge him with intentional misconduct, but the rest of the proposal letter and its supporting materials reference the appellant's explanations, including his repeated claims that the alleged misconduct was either justified or unintentional. Moreover, the appellant's response to the proposed removal is filled with the appellant's assertions about the same. The deciding official's testimony indicates that she rejected these explanations when weighing the *Douglas* factors. In so doing, the deciding official did not violate the appellant's right to due process. *See, e.g.,*

*Mathis v. Department of State*, 122 M.S.P.R. 507, ¶¶ 9-16 (2015); *Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶¶ 12-13 (2014); *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶¶ 10-12 (2014), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015). A deciding official does not violate an employee's right to due process when they consider issues raised by an employee in a response to the proposed adverse action and then reject those arguments in reaching a decision. *E.g., Mathis*, 122 M.S.P.R. 507, ¶ 9. An employee is not entitled to know the particular weight the deciding official will attach to arguments raised in response to the proposed adverse action in advance of the final decision. *Id.*

¶16    In conclusion, we find that the deciding official did not violate the appellant's right to due process by considering and rejecting the appellant's explanations for the alleged misconduct, which were described in the proposal letter, the materials in support of the proposal, and the appellant's response to the proposal. On remand, the administrative judge must adjudicate the merits of the appellant's removal, along with any other affirmative defenses the appellant has raised.[4]

---

[4] Though unmentioned in the initial decision, we note that a prehearing conference summary indicated that the appellant intended to pursue claims of disability discrimination, harmful error, and unnamed violations of law. IAF, Tab 13 at 1. The administrative judge should ensure that the remand initial decision addresses whether the appellant has continued to pursue these claims and, if necessary, address them on the merits. *See generally Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶ 8 (2016 (recognizing that if an appellant raises an affirmative defense that could result in compensatory damages, that issue remains live even if the underlying appealable action is not).

**ORDER**

¶17    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.